**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AMERICAN HOME MORTGAGE INVESTMENT CORP., <br><br> Appellant, <br><br> v. <br><br> LEHMAN BROTHERS INC. and LEHMAN COMMERCIAL PAPER INC., <br><br> Appellees. | Civil Action <br> No. 08-484 (JJF) |

**MEMORANDUM OF LAW OF APPELLEES LEHMAN BROTHERS INC. AND
LEHMAN COMMERCIAL PAPER INC. IN OPPOSITION TO REQUEST OF
AMERICAN HOME MORTGAGE INVESTMENT CORPORATION FOR
CERTIFICATION FOR DIRECT APPEAL TO UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT AND TO MOTION TO STAY ACTION
PENDING ADJUDICATION OF CERTIFICATION REQUEST**

Lehman Brothers Inc. ("LBI") and Lehman Commercial Paper Inc. (together, "Lehman"),

by their undersigned counsel, hereby oppose the request of American Home Mortgage

Investment Corporation ("AHMIC") for certification for direct appeal to the United States Court

of Appeals for the Third Circuit (the "Third Circuit") pursuant to 28 U.S.C. §158(d)(2) (the

"Certification Request"), and AHMIC's motion to stay all proceedings pending the adjudication

of the certification request.  In support of this opposition, Lehman respectfully submits as

follows:

**PRELIMINARY STATEMENT**

On May 23, 2008, the United States Bankruptcy Court for the District of Delaware

(Sontchi, J.) (the "Bankruptcy Court") effectively dismissed AHMIC's complaint in its entirety.[1]

---

[1] The Bankruptcy Court dismissed Counts I, II, III, IV, and the first four claims for declaratory judgment in Count V of the AHMIC's complaint against Lehman with prejudice, provided that the portion of asserting a pre-petition breach of contract was dismissed without prejudice to allow AHMIC an opportunity to plead

Just as it did in the Bankruptcy Court, AHMIC seeks to leapfrog the normal appellate process and proceed directly to the Third Circuit. But, this appeal belongs in this Court, not in the Third Circuit because the issues raised by AHMIC do not involve questions of law that are appropriate for direct appeal under 28 U.S.C. § 158(d)(2)(A).

In the Certification Request, AHMIC contends that the Bankruptcy Court's opinion dismissing its complaint raised issues of public import as to which there is no controlling authority, and the resolution of which would materially advance this adversary proceeding and the chapter 11 cases of AHMIC and certain of its affiliates (collectively, the "Debtors") as a whole. But the broad, vague, and fact dependent "issues of first impression" AHMIC posits are not the questions of law contemplated by section 158(d)(2)(A) to predicate a direct appeal. What is more, these issues do not implicate a broad swath of debtors (i.e., they would only conceivably affect bankrupt parties to master repurchase agreements and securities contracts, who elect to challenge the safe harbors extended to such contracts by the Bankruptcy Code) to merit immediate circuit court review. In granting Lehman's motion to dismiss, the Bankruptcy Court simply interpreted unambiguous Bankruptcy Code provisions and applied well-settled New York state law to the facts alleged in AHMIC's complaint. There simply is nothing "transcendentally important" about the allegations asserted in AHMIC's complaint or in the Bankruptcy Court's dismissal of the same.

It also should be noted that AHMIC seeks direct certification of legal issues that it failed to raise with the Bankruptcy Court, such as (a) Lehman purportedly breached a contractual

---

with more specificity its claim of damages by June 30, 2008. AHMIC elected not to re-plead its claim for damages with respect to its pre-petition breach of contract claim, thus waiving that claim. AHMIC subsequently moved the Bankruptcy Court to amend its May 23, 2008 order to provide that it was a "final judgment", despite that the fifth claim for declaratory judgment in AHMIC's complaint was not dismissed. On June 30, the Bankruptcy Court granted that request, issuing an amended order granting Lehman's motion to dismiss.

NY\1446962.2

commercial reasonableness obligation when it liquidated the subordinated notes it purchased from AHMIC under the master repurchase agreement and (b) whether an <u>ipso facto</u> termination of a repurchase agreement extinguishes any residual interest the repurchase-agreement borrower has in the underlying collateral. Since these issues were not raised in the Bankruptcy Court, they cannot be raised in this Court or in the Third Circuit. It is not the job of an appellate court to remediate a plaintiff's failure to plead allegations in its complaint.

A rushed appellate process will not advance the Debtors' exit from their chapter 11 cases – which are bound for liquidation – in any meaningful way. The Debtors are not simply waiting until this litigation ends before proposing a plan of liquidation and continuing the process toward exiting chapter 11, nor should they. Indeed, the Debtors already have filed a proposed chapter 11 plan of liquidation (the "<u>Proposed Plan</u>")[2] and an accompanying disclosure statement (the "<u>Proposed Disclosure Statement</u>").[3] The Bankruptcy Court is scheduled to hold a hearing to consider the adequacy of the Proposed Disclosure Statement on September 15, 2008.[4] Assuming a relatively uneventful plan confirmation process, the Proposed Plan could be confirmed by the Bankruptcy Court and become effective by the end of this year.

Moreover, if this Court certifies this appeal to the Third Circuit as AHMIC requests, it would be throwing on the lap of the Third Circuit an extremely ill-defined and repetitive 25-item list of "issues on appeal" that AHMIC prepared in connection with this appeal.[5] To the extent

---

[2]     See <u>In re American Home Mortgage Holdings, Inc.</u>, Case No. 07-11047 (Bankr. D. Del.) [Docket No. 5450].

[3]     See <u>In re American Home Mortgage Holdings, Inc.</u>, Case No. 07-11047 (Bankr. D. Del.) [Docket No. 5451].

[4]     See <u>In re American Home Mortgage Holdings, Inc.</u>, Case No. 07-11047 (Bankr. D. Del.) [Docket No. 5452].

[5]     See Designation of Appellant American Home Mortgage Investment Corporation, Pursuant to Fed. R. Bankr. P. 8006, of Items to be Included in the Record on Appeal and Statement of Issues on Appeal With Respect to Appeal From (I) Order Dismissing in Part With Prejudice and in Part Without Prejudice

that the Third Circuit would be expecting a straightforward and well thought-out list of issues it is being asked to resolve in a direct appeal from the Bankruptcy Court, it would be sorely disappointed. For all of these reasons, this Court should deny the Certification Request.

**FACTUAL BACKGROUND**

AHMIC's complaint against Lehman (the "Complaint") alleged the following facts:

## I.    FACTUAL BACKGROUND WITH RESPECT TO THE AHMIC/LEHMAN REPURCHASE AGREEMENT, AS ALLEGED BY AHMIC

On August 6, 2007, the Debtors filed voluntary petitions in the Bankruptcy Court pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). See Complaint at ¶ 40.[6]

Before their chapter 11 filings, the Debtors engaged in the business of residential mortgage loan origination. See Complaint at ¶ 9. They funded a portion of that business by selling mortgage loans to special purpose entities ("SPEs"). The SPEs, in turn, financed the purchases of those mortgages by issuing commercial paper and subordinated notes. See Complaint at ¶ 9. Broadhollow Funding, LLC ("Broadhollow"), one such SPE, acquired thousands of mortgage loans from American Home Mortgage Corp. Broadhollow used certain of these mortgages as collateral in issuing Series 2004-A Subordinated Notes under a Base Indenture dated May 27, 2004, and later Series 2005-A Subordinated Notes under a Supplement to the Base Indenture dated as of June 7, 2005. See Complaint at ¶ 10, 12.

---

Complaint Against Lehman Brothers Inc. and Lehman Commercial Paper Inc. and (II) Order Granting Motion to Alter and Amend Order Dismissing Complaint. Docket No. 2.

[6]    The Debtors no longer originate mortgage loans. The bankruptcy proceedings have largely involved winding up the Debtors' affairs and marshalling the property of the estate for distribution. On August 15, 2008, the Debtors filed the Proposed Plan and the Proposed Disclosure Statement. The Bankruptcy Court is scheduled to hold a hearing to consider the adequacy of the Proposed Disclosure Statement on September 15, 2008.

4

On or about June 8, 2005, LBI sold $53,125,000 worth of Broadhollow Series 2005-A Subordinated Notes to AHMIC. On July 11, 2007, LBI sold $31 million worth of Series 2004-A Subordinated Notes to AHMIC. (All of the subordinated notes purchased by AHMIC from LBI in 2005 and 2007 are collectively referred to herein as the "Subordinated Notes"). See Complaint at ¶¶ 15, 18. In both the June 8, 2005 and July 11, 2007 transactions, AHMIC acquired the Subordinated Notes from LBI at a price equal to 97% of their face value.

On July 13, 2007, AHMIC sold the Subordinated Notes to LBI pursuant to a Master Repurchase Agreement (the "MRA"). See Complaint at ¶¶ 16, 17, 18; MRA at ¶ 1. The MRA is the September 1996 version of The Bond Market Association form Master Repurchase Agreement, along with two annexes thereto. The MRA includes an explicit acknowledgement by the parties that their agreement is "a 'repurchase agreement' as that term is defined in Section 101 of Title 11 of the United States Code, as amended" and "a 'securities contract' as that term is defined in Section 741 of Title 11 of the United States Code, as amended" subject to any limitations those definitions impose. See MRA at ¶ 19.

Pursuant to the MRA, LBI agreed to pay AHMIC $61,200,930 for the Subordinated Notes, which is an amount equal to 75% of the price paid by LBI (or 75 % of 97% of face value). See Complaint at ¶ 17. Under the MRA, AHMIC was obligated to repurchase the Subordinated Notes from LBI at a date certain or on demand for a specified sum, known as the "Repurchase Price." See MRA at ¶¶ 1, 2(r). In the interim, as is typical in repurchase arrangements, LBI had the bargained-for right to monitor the "market value" of the Subordinated Notes and, if their value fell below a specified level, to demand that AHMIC make margin payments to LBI. See id. at ¶ 4. If AHMIC failed to make a margin payment, then LBI was entitled to declare an Event of Default under the MRA, accelerate AHMIC's repurchase

NY\1446962.2

obligation, and either (a) sell the Subordinated Notes to cover AHMIC's repurchase obligation or (b) in its sole discretion, elect to mitigate against any damages LBI suffered as a result of the Event of Default. See id. at ¶ 11.

On July 23, 2007, in the midst of extreme turmoil in the credit markets, LBI issued a margin call to AHMIC in the amount of $3,785,625, asserting that the market value of the Subordinated Notes had dropped to 91% of their face value. AHMIC satisfied that margin call. See Complaint at ¶¶ 2, 25-28. On July 26, 2007, LBI issued another margin call in the amount of $6,940,313, advising AHMIC that the value of the Subordinated Notes had fallen to 80% of their face value. See id. at ¶ 30-32. AHMIC did not satisfy the July 26 margin call. See id. at ¶ 3, 33.

On August 1, 2007, as a result of AHMIC's failure to satisfy the July 26 margin call, LBI issued a notice of default to AHMIC under the MRA. See Complaint at ¶ 36. On August 6, 2007, AHMIC filed for bankruptcy protection in the Bankruptcy Court, thereby triggering an independent Event of Default under the MRA. See MRA at ¶¶ 2(a), 11(v). The MRA provides that "either party's right to liquidate Securities delivered to it in connection with Transactions hereunder or to exercise any other remedies pursuant to Paragraph 11 hereof is a contractual right to liquidate such Transaction as described in Sections 555 and 559 of Title 11 of the United States Code, as amended." See id. at ¶ 19.

AHMIC alleges that on August 27, 2007, LBI notified AHMIC that it had exercised its option under the MRA to terminate the agreement and that it either had foreclosed or intended to foreclose on the Subordinated Notes. See Complaint at ¶ 41. AHMIC also alleges that for the purposes of the foreclosure, LBI assigned a market value to the Subordinated Notes of 68.25% of their face value. See id. at ¶ 42.

NY\1446962.2

## II.    PROCEDURAL BACKGROUND: LEHMAN'S MOTION TO DISMISS

On October 24, 2007, AHMIC filed its Complaint against Lehman seeking recovery based on four causes of action (breach of contract, turnover, conversion, and unjust enrichment) and also asserting a claim for a declaratory judgment with five subparts.  Lehman moved to dismiss the bulk of the Complaint, on the basis that Lehman was entitled to the protections of the safe harbors of both section 555 and section 559 of the Bankruptcy Code.  Lehman also argued that AHMIC had failed to state a cause of action for breach of contract, turnover, unjust enrichment and conversion.

After briefing and oral argument, the Bankruptcy Court issued its opinion granting in part Lehman's motion to dismiss on May 23, 2008 (the "Opinion").  In the Opinion, the Bankruptcy Court found that the MRA was a "repurchase agreement" as defined by the Bankruptcy Code, and held that Lehman's rights under the MRA's ipso facto termination clause were protected both sections 555 and 559 of the Bankruptcy Code.  See Opinion at 2.  The Bankruptcy Court held that either safe harbor allowed Lehman to enforce its contractual rights after AHMIC's petition for bankruptcy, despite the automatic stay.  See Opinion at 29-30.  The Bankruptcy Court also held that turnover, conversion, and unjust enrichment are not applicable to this case and rejected all but one of AHMIC's declaratory judgment subcounts (which AHMIC later requested be dismissed for the purposes of obtaining a final judgment with respect to all of its claims in the Complaint).  See Opinion at 52.

Specifically, the Bankruptcy Court held that:

- Section 559 of the Bankruptcy Code applies to the MRA because the MRA is a "repurchase agreement," as defined in 11 U.S.C. 101(47).  See Opinion at 19.
- Section 555 of the Bankruptcy Code applies to the MRA because the MRA is a "securities contract" and LBI is a "stockbroker."  See Opinion at 28-29.

- Because both "safe harbors" in section 555 and section 559 apply, Lehman did not violate the automatic stay when it exercised its rights under the MRA.  See Opinion at 30.

- The unambiguous terms of the MRA show that it is a sale and purchase agreement and not a secured loan.  See Opinion at 36.

- Lehman's liquidation of the Subordinated Notes were not governed by Article 9 of the U.C.C.  See Opinion at 38.

- Because an Event of Default occurred under the MRA when AHMIC filed its bankruptcy petition, AHMIC failed to state a claim for breach of contract.  See Opinion at 40.

- AHMIC's turnover claim was premature.  See Opinion at 43.

- AHMIC's conversion claim was legally deficient because it merely restated AHMIC's breach of contract claim.  See Opinion at 47; and

- AHMIC's unjust enrichment claim must be dismissed because the MRA is a valid and enforceable contract and because AHMIC has not alleged any unjust enrichment other than the alleged wrongful foreclosure and/or liquidation.  See Opinion at 49.

In accordance with the Opinion, the Bankruptcy Court issued an order dated May 23, 2008 (the "May 23 Order") which dismissed with prejudice all but one subcount of the declaratory judgment and AHMIC's breach of contract claim (which was dismissed without prejudice and with leave to re-file).  On June 3, 2008, AHMIC moved to amend the May 23 Order as a final judgment on the dismissed claims, requesting that the Bankruptcy Court dismiss the remaining declaratory judgment subcount and stating that it had no intention of re-pleading the breach of contract claim.

On June 30, 2008, the Bankruptcy Court modified the May 23 Order.  On July 10, 2008, AHMIC appealed the May 23 Order and requested that the Bankruptcy Court certify the appeal directly to the Third Circuit.  On August 1, 2008, Lehman filed its opposition to AHMIC's request to certify the appeal to the Third Circuit.

On August 5, 2008, AHMIC's appeal of the May 23 Order was docketed with this Court.[7] The next day, the Bankruptcy Court denied AHMIC's certification request without prejudice, because the docketing of AHMIC's appeal with this Court had divested the Bankruptcy Court of power to certify the appeal. Therefore AHMIC's certification request to the Bankruptcy Court was moot.

**ARGUMENT**

Under 28 U.S.C. § 158(d)(2)(A), a section that was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), an otherwise appealable judgment or order shall be taken directly to the governing circuit court of appeals if either (a) the parties jointly certify or (b) the applicable court certifies, that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or the Supreme Court of the United States, or involves a matter of public importance;

> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

> and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

AHMIC argues that both prong (i) and prong (iii) are applicable to this case. AHMIC asserts that the Opinion resolved numerous "issues of first impression" for which there is no controlling precedent and that these "issues of first impression" involve matters of public importance. AHMIC also argues that direct certification will materially advance both AHMIC's

---

[7]    In its brief in support of the Certification Request, AHMIC argues that the docketing of its appeal of the May 23 Order was premature. See Brief at 15, n.27. The question of whether or not the docketing of the appeal was premature is irrelevant to this Court's determination of the merits of the Certification Request.

case against Lehman (because an appeal to the Third Circuit is, in AHMIC's opinion, inevitable) and the Debtors' bankruptcy cases as a whole (because AHMIC is considering bringing "numerous" similar claims against other repo counterparties).

There are at least three fundamental problems with AHMIC's Certification Request. First, AHMIC has not complied with its obligation under interim Bankruptcy Rule 8001(f)(3)(C) to state the "question itself" that is being appealed. Instead, the Certification Request states a litany of general issues that more closely resemble open-ended law school exam topics than a discrete legal question (or in the rare instance, "questions") that would be appropriate for direct appeal. This list is in addition to AHMIC's vague and repetitive 25-item list of "issues on appeal" that was filed on this Court's docket.[8]  Without questions and issues on appeal tailored to the Opinion itself, the appellate court's task of applying the standards that have developed under section 158(d)(2)(A) becomes immeasurably more difficult. Indeed, the court will be forced to make the extra effort to determine from the vague list of issues described in the Certification Request what the discrete legal questions requiring appellate review actually are. This makes the instant appeal unfit for direct certification to the Third Circuit.

Second, even if this Court or the Third Circuit could identify sua sponte the appealable issues in this case, it is unlikely that they would be the type of questions contemplated by the statute for direct certification (i.e., legal principles of general application that may become the subject of reasonable dispute). The Opinion focused its application of legal principles on the specific facts alleged in the Complaint, and thus any appellate issue would be fact-dependent. In addition, the Bankruptcy Court applied the relevant provisions of the Bankruptcy Code (each of which was unambiguous), the terms of a widely-used industry form master repurchase

---

[8]      See Docket No. 2.

NY\1446962.2

agreement, as well as well-developed principles of New York state law. In short, there are no real legal principles of reasonable dispute at issue in this case.[9]

Third, AHMIC's argument that direct certification of the appeal would "materially advance" the progress of the Debtors' chapter 11 cases is wrong. The Debtors have filed the Proposed Plan and the Proposed Disclosure Statement, so it is clear that they are not simply waiting for the outcome of this litigation before exiting chapter 11. If a chapter 11 plan of liquidation is confirmed by the Bankruptcy Court and becomes effective before the conclusion of this litigation, the litigation would be carried on by a trust or another vehicle established under such confirmed plan, and will not affect the amount of the recovery (if any) the Debtors would receive in connection with this action.

There are other problems with the Certification Request. For example, AHMIC cannot satisfy the "public importance" test under section 158(d)(2)(A) because the significance of the "issues" AHMIC posits – even if generously read – do not rise to the level courts have recognized as necessary for certification. The Opinion simply applied clear statutory language and precedent to reach its conclusions, and the appropriate place for the Debtors to seek relief from the effects of that statutory language is Congress, not the Third Circuit. Finally, AHMIC concedes that its "issues," even stated as broadly and vaguely as they are, are not the subject of conflicting decisions in other circuit courts. The presence of a conflict is a hallmark of nearly all published opinions involving questions that have been certified for direct appeal.

---

[9]     The only potential legal issue of potential legal dispute is the appropriate definition of "interests in mortgage loans." However, the definition of "interests in mortgage loans" would not have altered the Bankruptcy Court's ruling on Lehman's motion to dismiss, because the subordinated notes at issue in the Complaint are "securities," so the safe harbors of section 555 of the Bankruptcy Code would still apply.

NY\1446962.2

I.      **AHMIC FAILED TO IDENTIFY A QUESTION OF LAW THAT WARRANTS DIRECT APPEAL**

Under 28 U.S.C. §158(d)(2)(A)(i), an appeal shall be certified to the circuit court of appeals if it involves a question of law "as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States." AHMIC bears the burden of stating such a question in the Certification Request and then demonstrating that the Opinion "involved" such a question. Id. AHMIC has done neither.

A.      **AHMIC Has Not Stated Appropriate Questions for Appeal**

The five "issues of first impression" on which AHMIC seeks certification, listed on page 5 of AHMIC's brief in support of the Certification Request (the "Brief"), do not satisfy the very basic requirement that they be stated as legal questions appealing a specific issue decided in the Opinion. See Fed. R. Bankr. P. 8001(f)(3)(C) (interim rule). Indeed, the "issues" make no reference to the Opinion, or to the facts alleged in AHMIC's complaint. They do not even suggest any particular answer that AHMIC will seek to have an appeals court reach. Instead, AHMIC's "issues" merely state broad legal topics that, according to AHMIC, were "involved" in the Opinion. This Court is left to guess at what specific holding AHMIC intends to appeal, and how AHMIC believes the question should be resolved. That is plainly an insufficient basis on which to base a decision to certify, and for this reason alone AHMIC's request for certification should be denied.

B.      **Section 158(d)(2)(A)(i) Applies Only to Pure Questions of Law**

The legislative history for section 158(d)(2)(A) "confirms that Congress intended [it] to facilitate ... provision of guidance on pure questions of law." Weber v. United States Tr., 484 F.3d 154, 158 (2d Cir. 2007) (emphasis supplied). According to Weber, a case on which AHMIC's relies, a "pure" question of law is "discrete," "controlling," and "not heavily [fact]

dependent," and "can often be decided based on an incomplete or ambiguous record." Id.; see also Davis v. Hildebrand (In re Davis), 512 F.3d 856 (6th Cir. 2008) (citing Weber approvingly); In re 15375 Memorial Corp., Case No. 08-313-SLR, 2008 U.S. Dist. LEXIS 50842 at * 4-5 (D. Del. July 3, 2008) (refusing to certify bankruptcy law-related questions where the inquiry required was "necessarily fact-intensive").

The fact that a circuit court may not have published an opinion on the question as presented by the appellant is not dispositive. If there is no confusion within, or disputes among, the bankruptcy or district courts with respect to the relevant inquiry, then courts should be reluctant to certify the question directly to the circuit court. See, e.g., In re Marrama, 345 B.R. 458, 474 (Bankr. D. Mass. 2006); see also In re Davis, 512 F.3d at 858 (refusing to hear certified direct appeal because material advancement and conflicting case law prongs of section 158(d)(2)(A) were not met, and ignoring apparent lack of circuit-level precedent on question presented). In In re Marrama, the bankruptcy court denied certification even though the First Circuit had not ruled on the issue, because there was "no significant dispute" regarding the issue sought to be certified. In re Marrama, 345 B.R. at 474.

Similarly, even when there is a lack of appellate precedent, where a question of law is "answered directly by ... statutory provisions," courts have rejected requests for certification. In re Fields, 05-60595-JHW, 2006 Bankr. LEXIS 4090 at * 7 (Bankr. D. N.J. October 24, 2006). Finally, where state law provides the rule of decision on the question presented, there is no legal issue requiring a direct appeal to the circuit court. See In re 15375 Memorial Corp., 2008 U.S. Dist. LEXIS 50842 at * 6 (rejecting certification where some questions presented for appeal involved state law, material advancement could not be shown, and non-state-law questions

presented were not pure questions of law because they involved the application of clear standards to new facts presented and were thus "necessarily fact intensive").

AHMIC apparently takes the opposite view: that so long as a party can state its issue in a way that had not previously appeared in a published decision, it is entitled to direct appeal to the circuit court. See Brief at 19. Not even the cases cited by AHMIC stand for that proposition. Id. (citing Tidewater Finance Company v. Kenney, Case No. 07-1664, 2008 U.S. App. LEXIS 13377 (4th Cir. June 25, 2008); In re Scotia Pac. Co. LLC, 508 F.3d 214, 220 (5th Cir. 2007); In re Perlin, 497 F.3d 364 (3d Cir. 2007)). In Tidewater, 2008 U.S. App. LEXIS 13377 at *5, the Fourth Circuit accepted the certified appeal because in addition to lacking direct controlling precedent, the question at hand "requires the resolution of conflicting decisions among bankruptcy courts in various circuits." In re Scotia Pac. Co. LLC, 508 F.3d at 220, dealt primarily with procedural aspects of §158(d)(2)(A), and the Fifth Circuit's ultimate acceptance of certification was premised principally on the fact that "both the bankruptcy court and the district court sought to certify [the judgment] to this court for appeal." In re Perlin, 497 F.3d 364 at 367-69, contains no discussion whatsoever explaining the Third Circuit's decision to accept direct certification other than two passing references to the fact that the case was certified by the bankruptcy court. In addition, each of these cases involved a "pure question of law" worthy of direct appeal – a factor that is missing from AHMIC's Certification Request.

For all of these reasons, AHMIC's request for certification must fail.

## C.    AHMIC Has Failed to Demonstrate That the Opinion Involved a Pure Question of Federal Law Meriting Certification

None of the five broad "issues" AHMIC outlined in the Brief present pure, discrete issues of law that require an accelerated appellate process. Even if this Court were to decipher from the "issues" some discrete disputed legal questions of public importance that bear on the Bankruptcy

Court's holdings in the Opinion, the answers to those questions would undoubtedly be heavily dependent on the facts that AHMIC has alleged in its complaint.    Any appellate decision on an issue that could be drawn from the Opinion would have to be stated in terms of the specific facts on which AHMIC bases its claim.    As a result, all of the "issues" AHMIC cites are deficient and cannot satisfy the requirements of section 158(d)(2)(A)(i).    See Weber, 484 F.3d at 158-59.

AHMIC's list of issues also fails to satisfy the statutory standards for the following specific reasons:

### Issue 1

**Whether restrictions or standards apply to a repurchase-agreement lender in its performance of a repurchase agreement and in its exercising remedies under that agreement (e.g., foreclosing and liquidating the securities it purchased under the repurchase agreement following an ipso facto termination), including standards (a) expressly contained in the repurchase agreement (e.g., language requiring commercial reasonableness); (b) inherent in the repurchase agreement (e.g., an implied covenant of good faith and fair dealing) or (c) imposed under non-bankruptcy law (e.g., Article 9 of the Uniform Commercial Code).**

In addition to not being a pure, discrete, controlling question of law, Issue 1 does not justify direct appeal because it rests entirely upon New York state contract and U.C.C. law. Questions of state law are not appropriate issues for direct appeal to the circuit courts of appeals. See In re 15375 Memorial Corp., 2008 U.S. Dist. LEXIS 50842 at * 6.

### Issue 2

**Whether the repurchase-agreement borrower can state a claim upon which relief can be granted for the lender's breach of that agreement when the agreement terminates after the borrower's bankruptcy filing, including a breach of a provision requiring that the repurchase-agreement lender liquidate the underlying collateral following an event of default in a commercially reasonable manner, a breach of the implied covenant of good faith and fair dealing, and/or a breach of the standards of commercial reasonableness under the U.C.C.**

In addition to not being a pure, discrete, controlling question of law, Issue 2 does not require direct appeal because, like Issue 1, it is an issue that is answered primarily by the application of New York state contract law to the particular facts alleged by AHMIC in its complaint. To the extent Issue 2 refers to the application of Federal Rule of Civil Procedure 12(b)(6), there are countless cases in this Circuit giving guidance on the application of Rule 12(b)(6) to state-law contract actions, and therefore Issue 2 does not require direct certification. See In re Marrama, 345 B.R. at 474.

Moreover, AHMIC did not raise with the Bankruptcy Court the issue of Lehman's alleged breach of any contractual provision requiring the post-default liquidation of collateral in a commercially reasonable manner.[10] Accordingly, this is not an issue that can be raised on appeal. See generally, Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 139 (3d Cir. 2000) (refusing to examine legal issue not raised before the lower court), citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1115 (3d Cir. 1993).

### Issue 3

**Whether an _ipso facto_ termination of a repurchase agreement extinguishes any residual interest the repurchase-agreement borrower has in the underlying collateral, including the entitlement of a repurchase-agreement**

---

[10]    While AHMIC alleged that Lehman breached its contractual obligation to act in a commercially reasonable manner in issuing the pre-petition margin calls and the notices of termination of the master repurchase agreement, AHMIC did not assert that Lehman liquidated collateral in violation of a contractual commercial reasonableness obligation.

16

**borrower to its residual interest in securities it sold under a repurchase agreement after repaying amounts the borrower owes thereunder, under section 559 of the Bankruptcy Code or otherwise.**

In addition to not being a pure, discrete, controlling question of law, Issue 3 does not require direct appeal (and indeed cannot be raised on appeal) because AHMIC did not raise either question stated in Issue 3 in the Bankruptcy Court. See Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d at 139. The only issue argued below that touched upon AHMIC's alleged entitlement to any residual interest in the value of the securities foreclosed upon by Lehman was whether AHMIC had stated a claim for turnover of estate property pursuant to Bankruptcy Code section 542, or for unjust enrichment. See Answering Brief of Plaintiff American Home Mortgage Investment Corp., dated December 10, 2007 (Docket No. 16), at 3, 24. The Bankruptcy Court dismissed the turnover claim because it was premature, and the unjust enrichment claim because the MRA governed AHMIC's claims. See Opinion at 41-43, 47-51. Even if the argument and decision on these claims could be deemed to have raised a pure question of law addressing AHMIC's alleged entitlement to residual interests, the questions depend either upon the application of settled bankruptcy law or of state law to the facts of this case, and are not appropriate for direct appeal. See In re 15375 Memorial Corp., 2008 U.S. Dist. LEXIS 50842 at * 6; In re Marrama, 345 B.R. at 474.

## Issue 4

**Whether the residual interest of a repurchase-agreement borrower in securities it sold under a repurchase agreement (after repaying amounts the borrower owes thereunder) constitutes property of that borrower's bankruptcy estate pursuant to section 559 of the Bankruptcy Code that is subject to turnover.**

In addition to not being a pure, discrete, controlling question of law, Issue 4 does not require direct appeal because it turns on the settled law and statute governing Bankruptcy Code section 542 turnover actions. See, e.g., In re Fields, 2006 Bankr. LEXIS 4090 at * 7 (denying

17

certification of direct appeal where statute provides clear rule of decision); In re Marrama, 345

B.R. at 474 (denying certification where there is "no significant dispute regarding the applicable

standard"). The Bankruptcy Court relied on settled case law when it held that turnover actions

are only proper where the debtor's entitlement to property is not in dispute. See Opinion at 41-

43.

**Issue 5**

**The scope of the phrases "interests in mortgage loans" and "mortgage related securities" in the "repurchase agreement" definition found in section 101(47) of the Bankruptcy Code.**

In addition to not being a pure, discrete, controlling question of law, Issue 5 does not

require direct appeal because even if Issue 5 were deemed to raise a satisfactorily pure and

discrete question, there would be no reversible error. The Bankruptcy Court found that both the

safe harbors of sections 559 and 555 of the Bankruptcy Code permitted Lehman's termination of

the contract and foreclosure of the securities. See In re Advanced Mktg. Serv., Inc., 2008 U.S.

Dist. LEXIS 27582 at * 4 (noting, in the 28 U.S.C. 1292 context, that certification for appeal is

only warranted when legal conclusion in question, if erroneous, would constitute reversible

error). Section 555 applies to the termination of the MRA because the MRA was a "securities

contract" as defined in section 741(7) of the Bankruptcy Code, that is, "a contract for the

purchase, sale, or loan of a security ...". As Lehman demonstrated in its briefing in support of

its motion to dismiss AHMIC's complaint, whether or not the Broadhollow Notes were "interests

in mortgage loans" or "mortgage related securities" pursuant to section 101(47) of the

Bankruptcy Code, they were indisputably "securities" as defined in section 101(49) of the

Bankruptcy Code, and thus section 555 applied to the termination of the MRA. See Opening

Brief in Support of Motion to Dismiss, dated Nov. 26, 2007 (Docket No. 6), at 9.

## II.    THE MAY 23 ORDER DOES NOT IMPLICATE THE TYPE OF LEGAL QUESTIONS OF PUBLIC IMPORTANCE THAT WARRANT DIRECT APPEAL

28 U.S.C. § 158(d)(2)(A)(i) permits a direct appeal if the relevant judgment, order, or decree, "involves a matter of public importance." Here, however, considerations of public policy and the public interest actually weigh <u>against</u> direct appeal in this particular matter. Case law suggests that certification of issues of "public importance" for direct appeal should be granted only rarely, in cases in which numerous debtors may be immediately affected. Indeed, the two cases AHMIC cited in support of its argument for "public importance" certification both arise out of <u>consumer</u> bankruptcies where there is the potential for a single question of law to arise in a large number of bankruptcy cases. <u>See</u> <u>In re Ransom</u>, 380 B.R. 809 (9th Cir. BAP 2007) (certifying for direct appeal question relating to Chapter 13's "projected disposable income" requirement where "no less than fifty bankruptcy courts" had already addressed the issue); <u>In re Virissimo</u>, 332 B.R. 208 (Bankr. D. Nev. 2005) (certifying issue involving conflict between Nevada's "extremely liberal" homestead exemption and BAPCPA amendments to 11 U.S.C. §522(p) effecting homestead exemptions); <u>see also</u> <u>In re Salazar</u>, 339 B.R. 622, 634 (Bankr. S.D. Tex. 2006) (certifying for appeal question whether bankruptcy filing by debtor who is ineligible for Chapter 13 protection under BAPCPA nevertheless files a bankruptcy case and triggers the automatic stay, citing the "importance of this matter for many consumer debtors and their creditors"). Here, by contrast, the reverse is true – very few cases have raised the issues AHMIC asserts, and those cases raising similar issues have reached similar conclusions. Furthermore, the issues raised by AHMIC likely would be raised by few debtors in the future.

Moreover, public policy favors setting a high bar for "public importance" appeal certifications, so as not to overwhelm the circuit courts. <u>See, e.g.</u>, 1-5 COLLIER ON BANKRUPTCY 5.05[A] (15th ed. rev.) ("The bar for certification under [the public importance standard] should

19

be set high. A 'matter of public importance' should transcend the litigants and involve a legal

question the resolution of which will advance the cause of jurisprudence to a degree that is

usually not the case"). Pointing to its broad and vaguely-worded "issues of first impression,"

AHMIC argues that direct appeal is appropriate whenever a question of law "affects debtors

generally or creates the prospect of divergent authority." Brief at 20. This reading is not

supported by the case law that AHMIC cites, or by any other precedent of which Lehman is

aware. Unless Congress intended the phrase "involves a matter of public importance" to open

the floodgates to direct appeals in an overwhelming number of settings, the standard for appeals

under this provision must be set much higher.

## III. A DIRECT APPEAL WILL NOT MATERIALLY ADVANCE EITHER THE BANKRUPTCY CASES OR THE ADVERSARY PROCEEDING

Resolution of AHMIC's "issues" also would not materially advance the Debtors' chapter

11 cases or this litigation. 28 U.S.C. §158(d)(2)(A)(iii) permits this Court to certify a question

for direct appeal if such an appeal would "materially advance the case or proceeding in which the

appeal is taken." AHMIC argues that a direct appeal will materially advance this adversary

proceeding because a later appeal to the Third Circuit "may be inevitable," and an appeal to the

district court would be nothing more than "an intermediate step on the path to the Third Circuit."

Brief at 22-23. This argument has already been rejected by another bankruptcy court. In In re

Frye, No. LA 07-01150, 2008 Bankr. LEXIS 1319 (Bankr. C.D. Cal. Apr. 22, 2008), the court

denied certification, even though it acknowledged that direct appeal would materially advance

the progress of the particular adversary proceeding because, "it is always the case that skipping

one level of appeal would make the appeals process shorter. If such a showing were sufficient to

entitle an appellant ... to a certification under section 158(d)(2), every appeal would be an

appropriate candidate for certification under this section. Clearly, more must be required ..." <u>Id.</u> at *3-4 (emphasis in original).

The same is true for this case. The "more" that <u>Frye</u> requires is a showing of why a direct appeal to the Third Circuit would materially advance this litigation or the Debtors' bankruptcy cases more than would a normal appeal to this Court. <u>See</u> <u>In re Marrama</u>, 345 B.R. at 474. AHMIC does not even attempt to demonstrate why this particular litigation is so different from the multitudes of other "important" adversary proceedings that follow the traditional appellate path. Here, AHMIC chooses to rest its entire argument on the premise rejected by <u>Frye</u>.

Direct appeal will also not advance the Debtors' bankruptcy cases. Any chapter 11 plan in this case (just like chapter 11 liquidation plans in virtually every other similar case) will involve the liquidation of the Debtors' assets, the litigation of any claims of the estate by a trust or a similar vehicle created by the plan, and the payment of distributions to creditors. Indeed, the Debtors already filed the Proposed Plan on August 15, which provides for exactly that, so it is clear that they are not waiting for the outcome of this litigation to move forward with their planned exit from chapter 11. The speed at which this litigation is tried will not have any bearing upon the <u>size</u> of any recovery the Debtors will be able to recover from putative "lenders" and repo "counterparties." The only variable affected by the speed in which this action is tried will be the <u>timing</u> of any recoveries by the Debtors resulting from this action.

AHMIC ignores this, hinting instead that it has been "investigating possible claims and causes of action against its various lenders and repurchase-agreement counterparties," and that faster resolution of this appeal would aid the Debtors' ability to maximize value. Brief at 22. Even this is specious. In light of the filing of the Proposed Plan and the Proposed Disclosure

Statement, there is no reason to believe that any portion of the bankruptcy cases will be "materially advanced" by shortcutting the normal appeals process.

## IV.    AHMIC DID NOT, AND CANNOT, POINT TO CONFLICTING CASE LAW IN SUPPORT OF ITS CERTIFICATION REQUEST

Finally, AHMIC concedes that the May 23 Order does not require "resolution of conflicting decisions." Even though 28 U.S.C. § 158(d)(2)(A) allows direct appeals if any of the enumerated factors are present, the existence of conflicting opinion is particularly important for courts reviewing a certification decision. In In re Marrama, the court noted, "while there is no controlling case law in this circuit, the case law above reflects that there is no significant dispute regarding the applicable standard," 345 B.R. at 474 (emphasis supplied). For the Marrama court, the lack of controlling precedent alone was not enough to warrant direct certification, because the question presented lacked sufficient substantive weight to warrant the appeals court's immediate attention.

The Opinion simply applied consistent precedent. The only court to ever find that termination of a repo agreement *was* subject to the automatic stay is the bench ruling of Lombard-Wall Inc. v. Columbus Bank & Trust Co. (In re Lombard-Wall Inc.), No. 82-8-11556 (Bankr. S.D.N.Y. Sept. 16, 1982). Reaction to the Lombard-Wall decision was swift and fierce:

> "Congress, the Board of Governors of the Federal Reserve, the Public Securities Association, the Investment Company Institute and others, were concerned that if Lombard-Wall became the law governing repo transactions, the failure of one repo dealer, and the consequent inability of repo participants to promptly liquidate their investments to obtain cash to meet obligations, could have a ripple effect throughout the country's financial markets, causing an otherwise isolated financial problem to spread to many other entities."

Bevill, Bresler & Schulman Asset Mgmt. Corp. v. Spencer S&L Ass'n. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 878 F.2d 742, 748 (3d Cir. 1989). The Opinion was consistent

with more than 20 years of legislative action and precedent since <u>Lombard-Wall</u> that indicates

that repo participants can and should be able to liquidate their position in the even that the repo

counter-party files for bankruptcy.  The fact that AHMIC cannot argue that there is any

conflicting opinion on this point is yet another reason why certification should be denied.

## V.    AHMIC'S REQUEST TO STAY THIS COURT'S PROCEEDINGS PENDING A RULING ON THE CERTIFICATION REQUEST SHOULD BE DENIED

AHMIC's request that this Court stay the current appellate proceedings pending a ruling

on the Certification Request should also be denied.  For the reasons stated above, this appeal

belongs in this Court, and not in the Third Circuit.  Accordingly, there is no reason for a stay.

Mediation and briefing schedules should remain on track, so that the appellate proceedings in

this Court can continue in an orderly fashion.

In support of its request for a stay, AHMIC simply makes the observations that this Court

has the power to manage its docket, and that this Court can rule on the Certification Request

quickly.  These (correct) observations actually militate against the issuance of a stay, unless this

Court was inclined to grant the Certification Request.  Because the Certification Request lacks

merit, this Court can swiftly deny it.  In sum, there simply is no good reason to stay the current

proceedings in this Court because of the pending Certification Request.

AHMIC also cites a case that is clearly distinguishable in favor of its request for a stay.

<u>See</u> <u>Pegasus Dev. Corp. v. Direct TV</u>, No. 00-1020, 2003 WL 21105073 (D. Del. May 14, 2003).

In that case, <u>which predated (and thus did not even involve) 28 U.S.C. §158(d)(2)</u>, the court

stayed the litigation of a "quite complex" and "extraordinary" patent infringement case while the

U.S. Patent and Trademark Office (PTO) re-examined certain patents that were the subject of the

lawsuit.  In that case, the court stayed the litigation for a number of reasons not applicable here,

such as (a) the outcome of the PTO's reexamination process would provide the court with the

benefit of the PTO's particular expertise, (b) the record of the PTO's reexamination likely would

be entered at trial, reducing the complexity and length of the litigation, and (c) the issues,

defenses and evidence would be more easily limited in pre-trial conferences following a re-

examination. See id. at *2. Here, a stay would not serve to simplify the litigation or to make the

trial court's job easier. Rather, it simply would waste time.

      **WHEREFORE**, Lehman respectfully requests that this Court deny the Certification

Request with prejudice.


Dated: Wilmington, Delaware
      September 2, 2008

                             **ASHBY & GEDDES, P.A.**


                             By: _AMWinfree_____

                                 William P. Bowden (I.D. #2553)
                                 Amanda M. Winfree (I.D. #4615)
                                 500 Delaware Avenue
                                 P.O. Box 1150
                                 Wilmington, Delaware 19899
                                 Telephone: (302) 654-1888
                                 Facsimile: (302) 654-2067

                                 and

                             **LATHAM & WATKINS LLP**

                                 Robert J. Rosenberg
                                 Noreen A. Kelly-Najah
                                 George Royle
                                 Michael J. Riela
                                 Jason Sanjana
                                 885 Third Avenue, Suite 1000
                                 New York, New York 10022
                                 Telephone: (212) 906-1200
                                 Facsimile: (212) 751-4864

                                 Attorneys for Appellees Lehman Brothers
                                 Inc. and Lehman Commercial Paper Inc.

# <u>UNREPORTED CASES</u>

FOCUS™ Terms [                    ]    Search Within [Original Results (1 - 1) ▼]  [Go ►]

View: Full | Custom

◄◄◄◄ 1 of 1 ►►►►
Shepardize® | TOA

Print | Download | Fა

(A) BEPCO LP v. GlobalSantaFe Corp. (In re 15375 Mem&#..., 2008 U.S. Dist. LEXIS 50842  (Copy w/

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 50842**

*2008 U.S. Dist. LEXIS 50842, ***

In re: 15375 MEMORIAL CORPORATION, et. al., Debtors. BEPCO LP, Appellant, v. GLOBALSANTAFE CORPORATION, et al., Appellees. BEPCO LP, Appellant, v. SANTA FE MINERALS INC., Appellee. BEPCO LP, Appellant, v. GLOBALSANTAFE CORPORATION, et al., Appellees. BEPCO LP, Appellant, v. GLOBALSANTAFE CORPORATION. et. al., Appellees.

Civ. A. No. 08-313-SLR, Civ. A. No. 08-314-SLR, Civ. A. No. 08-321-SLR, Civ. A. No. 08-322-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2008 U.S. Dist. LEXIS 50842

July 3, 2008, Decided

**PRIOR HISTORY:  [*1]**
Chapter 11. Bk. No. 06-10859-KG. Jointly Administered. Bk. No. 06-10859. Adv. 06-50822. AP 08-29. Bk. No. 06-10859. Adv. 06-50822. AP 08-30.
Sante Fe Minerals, Inc. v. BEPCO, L.P. (In re 15375 Mem'l Corp.), 386 B.R. 548, 2008 Bankr. LEXIS 1114 (Bankr. D. Del., 2008)

**CORE TERMS:** decree, question of law, direct appeal, eligible, certification, good faith, unusual circumstances, corporate existence, dissolution, reargument, sentence, convert, untimely, mooted

**COUNSEL:** For 15375 Memorial Corporation, et al (1:08-cv-00313-SLR, 1:08-cv-00314-SLR, 1:08-cv-00322-SLR), Debtor: John D. Demmy ▾✍, Stevens & Lee, Wilmington, DE.

For BEPCO LP, formerly known as Bass Enterprises Production Company (1:08-cv-00313-SLR, 1:08-cv-00314-SLR, 1:08-cv-00321-SLR, 1:08-cv-00322-SLR), Appellant: Gregory W. Werkheiser ▾, LEAD ATTORNEY, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For GlobalSantaFe Corporation, GlobalSantaFe Corporate Services Inc., Entities Holdings Inc. (1:08-cv-00313-SLR, 1:08-cv-00322-SLR), Appellees: Francis A. Monaco, Jr. ▾, LEAD ATTORNEY, Womble Carlyle Sandridge & Rice PLLC, Wilmington, DE.

For Santa Fe Minerals Inc. (1:08-cv-00313-SLR, 1:08-cv-00314-SLR), Appellee: John D. Demmy ▾✍, LEAD ATTORNEY, Stevens & Lee, Wilmington, DE.

For 15375 Memorial Corporation (1:08-cv-00321-SLR), Debtor: John D. Demmy ▾✍, Stevens & Lee, Wilmington, DE.

For GlobalSantaFe Corporation, GlobalSantaFe Corporate Services Inc., Entities Holdings Inc.

(1:08-cv-00321-SLR), Appellees: Kevin J. Mangan ▾, LEAD ATTORNEY, Womble Carlyle Sandridge & Rice  [*2] PLLC, Wilmington, DE.

**JUDGES:** Sue L. Robinson ▾, United States District Judge.

**OPINION BY:** Sue L. Robinson ▾

OPINION

MEMORANDUM ORDER

At Wilmington this 3d day of July, 2008, having reviewed Bepco LP's ("Bepco"'s) motion for certification of the above-captioned actions for direct appeal and the papers filed in connection therewith;

IT IS ORDERED that said motion ¹ is denied, for the reasons that follow:

FOOTNOTES

1 Filed at Civ. A. No. 08-313, D.I. 6; Civ. No. 314, D.I. 5; Civ. No. 08-321, D.I. 6; Civ. No. 08-322, D.I. 6.

1. Bepco seeks a direct appeal of the bankruptcy court's findings of fact and conclusions of law (Bk. D.I. 291) and memorandum opinion on reargument (Bk. D.I. 323) to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2). ²

FOOTNOTES

2 "The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that --

(i) the judgment, order, or decree involves a question of law as to which there is no controlling  [*3] decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree." 28 U.S.C. § 158(d)(2).

2. Bepco asserts that "[a]bsent an expedited consideration of these appeals, there is a substantial risk that Bepco's ability to obtain meaningful appellate review of the Bankruptcy

Court's decisions refusing to dismiss these [chapter 11 cases] will be mooted." (Civ. No. 08-313, D.I. 6 at 5) Specifically, Bepco claims that the amended plan being pursued by the debtors "contains impermissible third party releases and injunctions" and would deny Bepco any ability to recover from non-debtor GSF entities. (*Id.* at 6)

3. As an initial matter, a revised plan has not yet been confirmed, and Bepco's request is untimely. Secondly, any risk of Bepco's appeals being mooted via the debtors' [*4] plan process moving forward should have been addressed first by a request by Bepco for a stay of these proceedings pending appeal, not a request for certification.

4. Bepco further asserts that three questions of law warrant direct appeal: (1) "whether the Bankruptcy Court, once it finds 'cause' under section 1112(b)(4)(A) of the Bankruptcy Code based on 'substantial or continuing loss to or duration of the estate and the absence of a reasonable likelihood of rehabilitation,' retains the discretion under section 1112(b) of the Bankruptcy Code not to dismiss or convert the case or appoint a trustee"; (2) "whether the Bankruptcy Court erred in not dismissing the Debtors' chapter 11 cases for lack of good faith"; and (3) "whether Santa Fe, as a dissolved corporation, remains eligible to be a debtor under chapter 11 of the Bankruptcy Code" insofar as its dissolution was irrevocable prior to filing. (*Id.* at 7)

5. The court finds that a pure question of law has not been stated. Bankruptcy Code sections 1112(b)(1) and (b)(2) provide that the bankruptcy court has discretion not to convert or dismiss the cases upon its finding that "unusual circumstances" exist that establish that conversion [*5] or dismissal is not in the creditors and the estate's best interests. Bepco ultimately seeks a review of whether such "unusual circumstances" exist on the record. This review is necessarily fact-intensive, [3] as is a review of that court's determination that no lack of good faith exists on the part of the debtors. [4] Such factual issues preclude a direct appeal.

## FOOTNOTES

[3] Judge Gross denied Bepco's motion to dismiss upon finding that, *inter alia,* the debtors are not sustaining continuing losses, "[c]reditors are not being prejudiced by the continuation of the bankruptcy cases," and the debtors have established several programs which ultimately benefit the creditors. *See* Bk. No. 06-10589, memorandum opinion on reargument, at 6-7 (found at Civ. No. 08-313, D.I. 6, pt. 2 at 99-100) (hereinafter, "Memorandum Opinion").

[4] Judge Gross found that

the Bepco claim and others are claims from which debtors have requested protection. Their bankruptcies have also provided them with breathing space which debtors have used to establish that they have insurance protection which benefits debtors and creditors. Debtors have also gone beyond an inventory of their policies; they have triggered coverage.

Memorandum opinion [*6] at 8. In addition, the Judge noted that the debtors filed a joint plan of liquidation. *Id.*

6. Finally, as Judge Gross has previously noted, the question of whether Santa Fe maintains a corporate existence sufficient to be an eligible chapter 11 debtor (pursuant to 11 U.S.C. § 109(d)) involves the application of state law; [5] this "determination rests on the existence of the corporation after dissolution." [6] *See In re 15375 Memorial Corp.,* 382 B.R. 652, 681 (D. Del. 2008) (citations omitted). This is not a legal issue appealable to the Third Circuit.

**FOOTNOTES**

5 In the case at bar, the law of Wyoming.

6 Judge Gross found that, "[b]ecause Wyoming law provides for Santa Fe to maintain its corporate existence to wind up its affairs, Santa Fe's existence as of the Petition Date was sufficient for it to be an eligible debtor, and to file its Chapter 11 petition." *In re 15375 Memorial Corp., 382 B.R. at 681.*

7. In sum, Bepco's motion is untimely and, notwithstanding, voices nothing more than a disagreement with the disposition of this case by the bankruptcy court. Bepco's motion for certification is denied.

/s/ Sue L. Robinson

United States District Judge

View: Full | Custom           1 of 1          Print | Download | Fax | Email | Text Only
                              *Shepardize®* | TOA

(A) **BEPCO LP v. GlobalSantaFe Corp. (In re 15375 Mem&#..., 2008 U.S. Dist. LEXIS**          Pages: 5
**50842** (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 50842**
View: **Full**
Date/Time: Tuesday, September 2, 2008 - 6:11 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
▨ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

● LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms [                                    ] Search Within [Original Results (1 - 1) ▼] [Go →]

View: **Full** | Custom                    ◀◀◀ **1 of 1** ▶▶▶                    Print | Download | Fa
                                        Shepardize® | TOA

**Ⓐ** In re Fields, 2006 Bankr. LEXIS 4090  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2006 Bankr. LEXIS 4090**

*2006 Bankr. LEXIS 4090, ***

⬇ View Available Briefs and Other Documents Related to this Case

Re: Albert J. Fields, Jr.

Case No. 05-60595/JHW

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

2006 Bankr. LEXIS 4090

October 24, 2006, Decided

## CASE SUMMARY

**PROCEDURAL POSTURE:** The bankruptcy court issued an oral ruling that denied Chapter 7 debtor's motion to reconsider its previous ruling that creditor, a foreclosing mortgagee on debtor's residence, had not violated the automatic stay provisions of 11 U.S.C.S. § 362, warranting the avoidance of all post-petition collection activity pursued by creditor. The bankruptcy court issued a written opinion to clarify its oral ruling.

**OVERVIEW:** The Chapter 7 trustee had abandoned debtor's residence because the liquidation of the property was of inconsequential value to the estate. An order discharging debtor was issued, and the case was closed. Debtor argued that the actions of the mortgagee in continuing with foreclosure after the abandonment of debtor's residence by the trustee constituted a violation of the automatic stay. The bankruptcy court disagreed. Under 11 U.S.C.S. § 554, a Chapter 7 trustee could abandon any property of the estate that was of inconsequential value and benefit to the estate. Following abandonment, the property abandoned reverted to the debtor, and was no longer property of the estate. Because property abandoned by the trustee was no longer property of the estate, the automatic stay under 11 U.S.C.S. § 362(a) terminated by operation of law. Debtor failed to recognize that a foreclosure proceeding was solely an action quasi in rem and that the relief granted was only against the land itself. As an action against the property of debtor, the foreclosure action was no longer stayed once the property was abandoned by the trustee.

**OUTCOME:** The bankruptcy court issued a written ruling denying debtor's motion to reconsider.

**CORE TERMS:** abandonment, notice, foreclosure, automatic stay, mortgagee, abandoned, decree, question of law, oral argument, reconsider, Fair Foreclosure Act, operation of law, automatic stay provisions, inconsequential, post-petition, foreclosing, automatic,

mortgage, progress, abandon, certify

## LEXISNEXIS® HEADNOTES    ⊟ Hide

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Duration 🗊
Bankruptcy Law > Estate Property > Abandonment > Trustee Action 🗊
*HN1* ± Under 11 U.S.C.S. § 554, a Chapter 7 trustee may abandon any property of the
estate that is of inconsequential value and benefit to the estate. Following
abandonment, the property abandoned reverts to the debtor, and is no longer
property of the estate. Under 11 U.S.C.S. § 362(c)(1), the stay of an act against
property of the estate under subsection (a) of this section continues until such
property is no longer property of the estate. 11 U.S.C.S. § 362(c)(1). Because
property abandoned by the trustee is no longer property of the estate, the
automatic stay under 11 U.S.C.S. § 362(a) terminated by operation of
law. More Like This Headnote | *Shepardize:* Restrict By Headnote

Real Property Law > Bankruptcy > Automatic Stays 🗊
Real Property Law > Financing > Mortgages & Other Security Instruments > Foreclosures >
General Overview 🗊
*HN2* ± A foreclosure proceeding is solely an action quasi in rem and that the relief
granted is only against the land itself. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction 🗊
*HN3* ± Under the newly amended provisions of 28 U.S.C.S. § 158 governing appeals, the
court of appeals has jurisdiction of bankruptcy appeals under limited
circumstances. As a predicate to an appeal directly to the court of appeals, the
bankruptcy court, the district court, or the bankruptcy appellate panel involved,
acting on its own motion, or on the request of a party to the order, or all of the
parties acting jointly, must certify that: (i) the judgment, order, or decree
involves a question of law as to which there is no controlling decision of the court
of appeals for the circuit or of the Supreme Court of the United States, or involves
a matter of public importance; (ii) the judgment, order, or decree involves a
question of law requiring resolution of conflicting decisions; or (iii) an immediate
appeal from the judgment, order, or decree may materially advance the progress
of the case or proceeding in which the appeal is taken. 28 U.S.C.S. § 158(d)(2)
(A). The court of appeals must authorize the direct appeal of the
order. More Like This Headnote

**�locate Available Briefs and Other Documents Related to this Case:**

U.S. Bankruptcy Court Motion(s)

**COUNSEL:** **[*1]** Albert J. Fields, Jr., Debtor, Pro se.

**JUDGES:** JUDITH H. WIZMUR, CHIEF U.S. BANKRUPTCY JUDGE.

**OPINION BY:** JUDITH H. WIZMUR

**OPINION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**LETTER OPINION**

Dear Mr. Fields and Mr. Donnelly:

I write to clarify my ruling, issued orally on October 10, 2006, to deny the debtor's motion to reconsider my previous ruling that the creditor, Jack Bleiman, had not violated the automatic stay provisions of 11 U.S.C. § 362, warranting the avoidance of all post-petition collection activity pursued by the creditor. As well, I write to address the debtor's Notice of Appeal filed on October 16, 2006, with the United States Bankruptcy Court, addressed to the United States Court of Appeals for the Third Circuit.

1. Motion to Reconsider

The debtor filed a Chapter 7 petition on December 6, 2005. Listed as an asset on the debtor's petition was his primary residence at 105 South Miller Avenue, Penns Grove, New Jersey. The value of the residence was listed at $ 46,000. The amount of the secured claim was listed at $ 37,000.

On January 26, 2006, the Chapter 7 trustee issued a Notice of Information for Abandonment, signifying the trustee's intention to abandon the debtor's residence because **[*2]** the liquidation of the property would be of inconsequential value to the estate. The Notice of Information for Abandonment was sent out on the same day, with an indication that objections to the abandonment were due by February 15. If no objections were filed, the abandonment would take effect "on the fifth day following the last day to file objections." No objections to the Notice of Information were received, and the abandonment became effective on February 20, 2006. An order discharging the debtor was issued on March 31, 2006. A final decree, issued on April 3, 2006, was followed by the closure of the case on the same date.

On July 10, 2006, the debtor filed a motion to reopen the case "to judge (sic) the Creditor violated the Automatic Stay Provisions of Section 362(a) of the Bankruptcy Code; [and] [t]o Vacate any and all post-petition non-bankruptcy matters between the parties as a result of the Creditor's violation of the Automatic stay." In his motion, the debtor complained that on February 27, 2006, he received a "Notice of Entry of Final Judgment" dated February 24, 2006, forwarded to him on behalf of Jack Bleiman, the foreclosing mortgagee on the **[*3]** debtor's residence "in accordance with paragraph 2 of subsection 6a of the Fair Foreclosure Act." The letter advised the debtor that to delay the foreclosure of the mortgage on his residence, under the Fair Foreclosure Act, the debtor must mail to the plaintiff, no later than 10 days after receipt of the notice, a statement that there is a reasonable likelihood that he would be able to provide payment necessary to cure the mortgage default within 45 days. The debtor was further informed that if such a statement were received, the creditor could not apply for the entry of final judgment prior to April 9, 2006. Apparently, the debtor submitted such a statement to the foreclosing mortgagee. The debtor further complained that on April 13, 2006, the mortgagee requested that a foreclosure judgment be entered. The foreclosure judgment was entered on June 21, 2006.

According to the debtor, the actions of the mortgagee in continuing with foreclosure after the abandonment of the debtor's residence by the trustee constituted a violation of the automatic stay, necessitating actual damages, including costs and attorney's fees, punitive damages, and a revocation of all actions taken in violation **[*4]** of the automatic stay. These arguments were rejected during oral argument on September 11, 2006. *HN1* Under 11 U.S.C. § 554, a Chapter 7 trustee may abandon any property of the estate that is of inconsequential value and benefit to the estate. Following abandonment, the property abandoned reverts to the debtor, and is no longer property of the estate. See Catalano v. C.I.R., 279 F.3d 682, 685 (9th Cir. 2002) ("Upon abandonment, the debtor's interest in the property is restored nunc pro tunc as of the filing of the bankruptcy petition."); In re St. Lawrence Corp., 239 B.R. 720, 723 (Bankr. D.N.J. 1999), aff'd, 248 B.R. 734 (D.N.J. 2000). Under 11 U.S.C. § 362(c)(1), "[t]he stay of an act against property of the estate under subsection (a) of this section

continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Because property abandoned by the trustee is no longer property of the estate, the automatic stay under 362(a) terminated by operation of law. See, e.g., In re Boland, 275 B.R. 675, 678 n.5 (Bankr. D.Conn. 2002) **[*5]** ("Abandoned property is not property of the estate and thus the technical abandonment terminates the automatic stay for Section 362(c)(1) purposes."); In re Beaudoin, 160 B.R. 25, 32 (Bankr. N.D.N.Y. 1993). In this case, the creditor's action to forward a Notice of Intent to Foreclose to the debtor, following the effective date of the abandonment, was an action against property which was no longer property of the estate. The property was no longer protected by the automatic stay. Therefore, the debtor's contention that the automatic stay was violated was rejected at oral argument.

On September 15, 2006, the debtor filed a motion to reconsider, arguing that the property abandoned to the debtor was protected from foreclosure under the provisions of 11 U.S.C. § 362(a)(5) until the bankruptcy case was closed, dismissed or discharged. At oral argument on the reconsideration motion, held on October 10, 2006, the debtor's contentions were rejected. In effect, the debtor argued that the actions of the mortgagee were directed against the debtor, and were therefore stayed until his Chapter 7 case were closed, dismissed, or a discharge granted or denied. **[*6]** 11 U.S.C. § 362(c)(2). The debtor failed to recognize that $^{HN2}$a foreclosure proceeding "is solely an action *quasi in rem* and that the relief granted is only against the land itself." Central Penn Nat'l Bank v. Stonebridge Ltd., 185 N.J. Super. 289, 302, 448 A.2d 498, 504 (Ch. Div. 1982). See also Resolution Trust Co. v. Berman Indus., Inc., 271 N.J. Super. 56, 62, 637 A.2d 1297, 1300 (Law Div. 1993). As an action against the property of the debtor, the foreclosure action was no longer stayed once the property was abandoned by the trustee.

On October 16, 2006, the debtor filed a Notice of Appeal with the United States Bankruptcy Court, addressed to the United States Court of Appeals for the Third Circuit. The Notice of Appeal was accompanied by a Motion for Leave to Appeal In Forma Pauperis on the form utilized by the United States District Court. No other documentation regarding the debtor's quest to be heard by the Third Circuit Court of Appeals was appended. $^{HN3}$Under the newly amended provisions of 28 U.S.C. § 158 governing appeals, the Court of Appeals has jurisdiction of bankruptcy appeals under limited **[*7]** circumstances. As a predicate to an appeal directly to the Court of Appeals, the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion, or on the request of a party to the order, or all of the parties acting jointly, must certify that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. § 158(d)(2)(A). The Court of Appeals must authorize the direct appeal of the order.

In this case, I am not able to certify that any of the conditions noted above are present in this matter. The question of law involved in this case is answered directly by the statutory provisions cited above. I am not aware of conflicting decisions regarding the **[*8]** termination of the automatic stay by operation of law following abandonment of property by the trustee. The material advancement of the progress of the case is not implicated. The case

has been completed and will be reclosed. Accordingly, no such certification will be provided. The Notice of Appeal will be transmitted to the District Court for adjudication under 28 U.S.C. § 158(a).

Very truly yours,

JUDITH H. WIZMUR

CHIEF U.S. BANKRUPTCY JUDGE

---

View: **Full** | Custom             1 of 1             Print | Download | Fax | Email | Text Only
                                    _Shepardize®_ | TOA

**A**  In re Fields, 2006 Bankr. LEXIS 4090  (Copy w/ Cite)                              Pages: 6

Service:  **Get by LEXSEE®**
Citation: **2006 Bankr. LEXIS 4090**
   View:  Full
Date/Time: Tuesday, September 2, 2008 - 6:12 PM EDT

* Signal Legend:
● -   Warning: Negative treatment is indicated
▣ -   Questioned: Validity questioned by citing refs
⚠ -   Caution: Possible negative treatment
◆ -   Positive treatment is indicated
Ⓐ -   Citing Refs. With Analysis Available
❶ -   Citation information available
* Click on any _Shepard's_ signal to _Shepardize®_ that case.

LexisNexis®   About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms [                                    ] Search Within [Original Results (1 - 1) ▾] [Go →]

View: **Full** | Custom                    ◄◄◄ 1 of 1 ►►►                Print | Download | Fa
                                          Shepardize® | TOA
                    ⚠ **Tidewater Fin. Co. v. Kenney, 531 F.3d 312**  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2008 U.S. App. LEXIS 13377**

*531 F.3d 312, \*; 2008 U.S. App. LEXIS 13377, \*\*;*
*Bankr. L. Rep. (CCH) P81,270*

TIDEWATER FINANCE COMPANY, Creditor-Appellant, v. JENNIFER LEE KENNEY, Debtor-Appellee, and FRANK J. SANTORO, Trustee-Appellee. WELLS FARGO BANK NA; GMAC, LLC; TOYOTA MOTOR CREDIT CORPORATION; FORD MOTOR CREDIT COMPANY, LLC; NUVELL CREDIT COMPANY, LLC; NUVELL NATIONAL AUTO FINANCE, LLC; AMERICAN SUZUKI FINANCIAL SERVICES COMPANY, LLC; NISSAN MOTOR ACCEPTANCE CORPORATION; BANK OF AMERICA, NA; AMERICAN HONDA FINANCE CORPORATION; AMERICREDIT FINANCIAL SERVICES, INCORPORATED; JPMORGAN CHASE BANK, NA, Amici Supporting Appellant.

No. 07-1664

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

531 F.3d 312; 2008 U.S. App. LEXIS 13377; Bankr. L. Rep. (CCH) P81,270

March 18, 2008, Argued
June 25, 2008, Decided

**PRIOR HISTORY:**  [\*\*1]
Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. (06-71975-DHA). David H. Adams, Bankruptcy Judge.
In re Kenney, 2007 Bankr. LEXIS 1646 (Bankr. E.D. Va., May 11, 2007)

**DISPOSITION:** VACATED AND REMANDED WITH INSTRUCTIONS.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Appellant creditor appealed from an order of the United States Bankruptcy Court for the Eastern District of Virginia, confirming appellee debtor's Chapter 13 bankruptcy plan. The bankruptcy court concluded that the hanging paragraph in 11 U.S.C.S. § 1325(a) prevented a 910 creditor from bifurcating her claim and asserting an unsecured deficiency claim for any portion of the debt not covered by the sale of the vehicle.

**OVERVIEW:** The narrow issue on appeal was whether the "hanging paragraph" in 11 U.S.C.S. § 1325(a) prevented a creditor with a purchase money security interest in a "910 vehicle" from exercising his contractual right, under state law, to an unsecured claim for the portion of the debt not covered by the sale of such vehicle (i.e., the deficiency amount) after the vehicle was surrendered to the creditor by a Chapter 13 debtor pursuant to 11 U.S.C.S. § 1325(a)(5)(C). Although Congress had unambiguously eliminated the 910 creditor's access to a federal remedy under 11 U.S.C.S. § 506(a), the court adopted the minority approach, and held that the hanging paragraph did not operate to deprive undersecured "910 creditors" of their deficiency claims because the parties were bound to their contractual rights and obligations under operative state law, and the Bankruptcy

Code did not command otherwise. Given the explicit language in the parties' contract, there was no dispute that the contract provided the creditor with a right to pursue a deficiency claim, and such contract was enforceable under Va. Code Ann. §§ 8.9A-607 - 8.9A-626.

**OUTCOME:** The order of the district court was vacated and remanded for further proceedings.

**CORE TERMS:** collateral, state law, surrender, hanging, security interest, secured claim, surrendered, securing, holder, unsecured claim, unsecured debts, sales contract, deficiency judgment, consumer, direct appeal, contractual right, unsecured creditors, debt owed, reorganization plan, confirmation, bifurcation, entitlement, valuation, repayment, bankruptcy proceeding, purchase money, secured creditor, contract provides, undersecured, contractual

## LEXISNEXIS® HEADNOTES  ⊟**Hide**

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Nonconsensual Confirmations

**HN1** The hanging paragraph in 11 U.S.C.S. § 1325(a) does not operate to deprive undersecured "910 creditors" of their deficiency claims because the parties are bound to their contractual rights and obligations under operative state law, and the Bankruptcy Code does not command otherwise. More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > Secured Creditors Rights
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Nonconsensual Confirmations

**HN2** The hanging paragraph in 11 U.S.C.S. § 1325(a) applies to claims secured by a purchase money security interest in a motor vehicle purchased within 910 days of the bankruptcy filing. Such claims are referred to as "910 claims," the vehicles are called "910 vehicles," and the creditors are called "910 creditors." The hanging paragraph specifically excludes 910 claims from the bifurcation method prescribed under 11 U.S.C.S. § 506. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction

**HN3** Appellate courts have subject matter jurisdiction over direct appeals from final orders of bankruptcy courts pursuant to 28 U.S.C.S. § 158(d)(2). More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review

**HN4** When the narrow issue on appeal concerns the proper interpretation of the Bankruptcy Code, an appellate court's review is plenary. More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Nonconsensual Confirmations

**HN5** A debtor who qualifies for Chapter 13 relief may submit a plan that modifies the rights of secured and unsecured creditors. The bankruptcy court will confirm the plan so long as it satisfies the requirements of 11 U.S.C.S. § 1325(a). Under 11 U.S.C.S. § 1325(a)(5), a plan's proposed treatment of an "allowed secured claim" will be confirmed if the plan can provide that (1) the debtor and secured creditor agree on how the claim will be paid, 11 U.S.C.S. § 1325(a)(5)(A); or (2) the debtor retains the collateral securing the claim while the creditor retains the lien

until either the debt is repaid under the plan or until the debtor receives a discharge, whichever occurs first, and the debtor pays adequate protection payments to the secured creditor, the total of which must not be less than the allowed amount of the claim as of the effective date of the plan, 11 U.S.C.S. § 1325(a)(5)(B); or (3) the debtor surrenders the secured collateral to the creditor holding the lien, 11 U.S.C.S. § 1325(a)(5)(C). More Like This Headnote

Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation >
Nonconsensual Confirmations
HN6 See 11 U.S.C.S. § 1325(a).

Bankruptcy Law > Claims > Types > Classification
Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
HN7 11 U.S.C.S. § 506(a) specifies how an allowed claim of a creditor secured by a lien on property should be valued by providing a method of bifurcating, or dividing, a consumer's debt into secured and unsecured amounts, with the unsecured amount equaling the amount that the debt exceeds the current value of the collateral. 11 U.S.C.S. § 506(a). Under this bifurcation method, an undersecured creditor becomes an unsecured creditor for purposes of pursuing a deficiency claim. More Like This Headnote

Bankruptcy Law > Claims > Types > Classification
Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
HN8 See 11 U.S.C.S. § 506(a).

Bankruptcy Law > Claims > Types > Classification
Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation >
Nonconsensual Confirmations
HN9 11 U.S.C.S. § 506 was applicable to the surrender provision in 11 U.S.C.S. § 1325 (a)(5)(C) pre-Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) and continues to be applicable post-BAPCPA. More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation >
Nonconsensual Confirmations
HN10 There is no question that Congress has unambiguously eliminated the 910 creditor's access to a federal remedy under 11 U.S.C.S. § 506 (a). More Like This Headnote

Governments > Legislation > Interpretation
HN11 Where the statutory language is clear, courts need not look beyond it. More Like This Headnote

Bankruptcy Law > Claims > Types > Secured Claims & Liens > Secured Creditors Rights
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation >
Nonconsensual Confirmations
HN12 The United States Court of Appeals for the Fourth Circuit has joined its sister courts in the Seventh, Eighth, and Tenth Circuits in holding that, after a debtor satisfies the requirements for plan confirmation under 11 U.S.C.S. § 1325(a)(5) (C) by surrendering his 910 vehicle, the parties are left to their contractual rights and obligations, and the creditor may pursue an unsecured deficiency claim under state law. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > General Overview 🔍

HN13⚓ Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property. As with property interests, state law creates and defines security interests at issue in bankruptcy proceedings if no federal law requires a different result. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > General Overview 🔍

HN14⚓ State law determines rights and obligations when the Bankruptcy Code does not supply a federal rule. More Like This Headnote

Bankruptcy Law > Claims > Allowance 🔍

HN15⚓ See 11 U.S.C.S. § 502.

Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview 🔍
Bankruptcy Law > Individuals With Regular Income > Plans > Confirmation > Nonconsensual Confirmations 🔍

HN16⚓ When a Chapter 13 debtor surrenders a 910 vehicle in accordance with 11 U.S.C.S. § 1325(a)(5)(C), the hanging paragraph does not extinguish a 910 creditor's unsecured deficiency claim so long as state law, in conjunction with the parties' contract, allows for such claim. 11 U.S.C.S. § 506 is not the exclusive method for separating out the deficiency as an unsecured portion of a 910 claim. More Like This Headnote

Bankruptcy Law > Claims > Allowance 🔍
Bankruptcy Law > Claims > Types > Secured Claims & Liens > General Overview 🔍

HN17⚓ 11 U.S.C.S. § 502 rather than 11 U.S.C.S. § 506 determines whether a claim should be allowed. Because 11 U.S.C.S. § 502 directs bankruptcy courts to allow claims stemming from contractual debts and neither diminishes nor disapproves of secured claims, it is evident that such deficiency claims must be permitted to the extent that state law allows for them. 11 U.S.C.S. §§ 502(a), 502(b)(1), 502 (k). More Like This Headnote

**COUNSEL:** ARGUED: James Robert Sheeran ▾, TIDEWATER FINANCE COMPANY, Chesapeake, Virginia, for Appellant.

Mark Clifton Leffler ▾, BOLEMAN LAW FIRM, P.C., Richmond, Virginia, for Appellees.

ON BRIEF: Matthew M. Barnes, TIDEWATER FINANCE COMPANY, Chesapeake, Virginia, for Appellant.

James M. Flaherty, BOLEMAN LAW FIRM, P.C., Richmond, Virginia, for Appellee Jennifer Lee Kenney.

Joseph R. Prochaska ▾ 🔍, WILLIAMS & PROCHASKA, P.C., Nashville, Tennessee; David Greer,

WILLIAMS MULLEN, Norfolk, Virginia, for Amici Supporting Appellant.

**JUDGES:** Before KING ▾ and DUNCAN ▾, Circuit Judges, and Jane R. ROTH ▾, Senior Circuit Judge of the United States Court of Appeals for the Third Circuit, sitting by designation. Senior Judge Roth ▾ wrote the opinion, in which Judge King ▾ and Judge Duncan ▾ joined.

**OPINION BY:** ROTH ▾

**OPINION**

[*314]  ROTH ▾, Senior Circuit Judge:

I.

This is a direct appeal by creditor Tidewater Finance Co. from the Bankruptcy Court's final order confirming debtor Jennifer Kenney's Chapter 13 bankruptcy plan. The narrow issue on appeal concerns a pure question of law and is **[\*\*2]** a matter of first impression with this Court: Whether the "hanging paragraph" in 11 U.S.C. § 1325(a), added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), prevents a creditor with a purchase money security interest in a "910 vehicle" from exercising his contractual right, under state law, to an unsecured claim for the portion of the debt not covered by the sale of such vehicle (i.e., the deficiency amount) after the vehicle is surrendered to the creditor by a Chapter 13 debtor pursuant to § 1325(a)(5)(C). [1] We hold that $^{HN1}$▾ the hanging paragraph does not operate to deprive such undersecured "910 creditors" of their deficiency claims because the parties are bound to their contractual rights and obligations under operative state law, and the Bankruptcy Code does not command otherwise. [*315] For this reason, we will reverse the decision of the Bankruptcy Court and remand the case for further proceedings consistent with this opinion.

**FOOTNOTES**

[1] $^{HN2}$▾ The hanging paragraph applies to claims secured by a purchase money security interest in a motor vehicle purchased within 910 days of the bankruptcy filing. Such claims are referred to as "910 claims," the vehicles are called "910 **[\*\*3]** vehicles," and the creditors are called "910 creditors." The hanging paragraph specifically excludes 910 claims from the bifurcation method prescribed under 11 U.S.C. § 506.

II.

Kenney purchased a 2003 Chevrolet Impala from Calvary Cars & Service on September 29, 2006, under a Retail Installment Sales Contract. Pursuant to the sales contract, Kenney made a down payment of $ 700, financed with Calvary the payment of $ 12,102.24, which included the cost of the vehicle, taxes, and other required fees, and provided Calvary with a purchase money security interest in the vehicle securing the entire debt. Calvary perfected the security interest and then assigned the sales contract, including the perfected security interest to Tidewater. Tidewater's lien was noted on the vehicle's title.

On December 19, 2006, less than three months after purchasing the vehicle, Kenney filed for bankruptcy. On February 1, she filed an amended Chapter 13 reorganization plan which provided for the surrender of the vehicle in full satisfaction of the debt she owed to Tidewater even though the vehicle was worth less than the balance owed. On March 6, Tidewater filed an objection to the confirmation of the amended **[\*\*4]** plan. On April 12, Tidewater filed a

proof of claim listing the total amount of secured debt as $ 12,341.84. After obtaining relief from the automatic stay and disposing of the surrendered vehicle, Tidewater amended its proof of claim to change the status of the debt to unsecured and the total amount of debt to $ 5,271.34--the deficiency amount due under the sales contract.

By order dated May 11, 2007, the Bankruptcy Court overruled Tidewater's objection to the plan's confirmation. Specifically, the Bankruptcy Court followed the approach taken by a majority of bankruptcy courts in other circuits, concluding that the hanging paragraph in 11 U.S.C. § 1325(a) prevents a 910 creditor from bifurcating her claim and asserting an unsecured deficiency claim for any portion of the debt not covered by the sale of the vehicle. The Bankruptcy Court then entered its order confirming the plan on May 25, 2007. ²

### FOOTNOTES

2 Kenney's Chapter 13 plan is funded at $ 210 per month for 36 months, a total of $ 7,560. It treats the surrender of the 910 vehicle to Tidewater as fully satisfying Kenney's entire indebtedness to Tidewater, including the $ 5,271.34 deficiency, and it promises a 15% dividend to all unsecured **[**5]** creditors, except Tidewater.

On June 5, 2007, the Bankruptcy Court certified, pursuant to Interim Rule 8001(f) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(d)(2)(A), that a direct appeal from Tidewater presents, among other things, a question of law as to which there is no controlling decision of this Court or of the United States Supreme Court and which requires resolution of conflicting decisions among bankruptcy courts in various circuits. We granted Tidewater's timely petition for direct appeal.

III.

*HN3*We have subject matter jurisdiction over direct appeals from final orders of bankruptcy courts pursuant to 28 U.S.C. § 158(d)(2). *HN4*Because the narrow issue on appeal concerns the proper interpretation of the Bankruptcy Code, our review is plenary. *Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 (4th Cir. 1996).

IV.

Chapter 13 of the Bankruptcy Code affords a reorganization remedy for consumers **[*316]** and business owners with relatively small debts. *Johnson v. Home State Bank*, 501 U.S. 78, 82, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). *HN5*A debtor who qualifies for Chapter 13 relief may submit a plan that modifies the rights of secured and unsecured creditors. The bankruptcy court will confirm the plan so long as it **[**6]** satisfies the requirements of 11 U.S.C. § 1325(a). Under § 1325(a)(5), a plan's proposed treatment of an "allowed secured claim" will be confirmed if the plan can provide that (1) the debtor and secured creditor agree on how the claim will be paid, *see id.* at § 1325(a)(5)(A); or (2) the debtor retains the collateral securing the claim while the creditor retains the lien until either the debt is repaid under the plan or until the debtor receives a discharge, whichever occurs first, and the debtor pays adequate protection payments to the secured creditor, the total of which must not be less than the allowed amount of the claim as of the effective date of the plan, *see id.* at § 1325(a)(5)(B); or (3) *the debtor surrenders the secured collateral to the creditor holding the lien, see id.* at § 1325(a)(5)(C). ³

### FOOTNOTES

3 Both prior and subsequent to the enactment of the BAPCPA, § 1325(a) provided, in

pertinent part, as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if--

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

* * * * *

(5) with respect to each *allowed secured claim* provided for by the plan--

(A) the **[\*\*7]** holder of such claim has accepted the plan;

(B)(i) the plan provides that--

(I) the holder of such claim retain the lien securing such claim until the earlier of--

(aa) the payment of the underlying debt determined under non-bankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if--

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

* * * * *

11 U.S.C. § 1325(a) (emphasis added).

By enacting the BAPCPA in 2005, Congress **[\*\*8]** revised § 1325(a) by adding an unnumbered paragraph--commonly referred to as the hanging paragraph--at the end of that subsection. The hanging paragraph provides as follows:

*HN6* For purposes of paragraph (5), *section 506 shall not apply to a claim* described in that paragraph if the creditor has a *purchase money security interest* securing the debt that is the subject of the claim, the *debt was incurred within the 910-day preceding the date of the filing* of the petition, and the *collateral for that debt consists of a motor vehicle* (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a) (emphasis added). Pertinent here,*HN7* § 506(a) specifies how an "allowed claim of a creditor secured by a lien on property" should be valued by providing **[*317]** a method of bifurcating, or dividing, a consumer's debt into secured and unsecured amounts, with the unsecured amount equaling the amount that the debt exceeds the current value of the collateral. [4] *See* 11 U.S.C. § 506(a). Under this bifurcation method, an undersecured **[**9]** creditor becomes an unsecured creditor for purposes of pursuing a deficiency claim.

## FOOTNOTES

4 For purposes of this appeal, the relevant portion of § 506 provides as follows:

*HN8* (a)(1) *An allowed claim of a creditor secured by a lien on property in which the estate has an interest,* or that is subject to setoff under section 553 of this title, *is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property*, or to the extent of the amount subject to setoff, as the case may be, *and is an unsecured claim to the extent that the value of such creditor's interest* or the amount so subject to setoff *is less than the amount of such allowed claim.* Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs **[**10]** of sale or marketing. *With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.*

11 U.S.C. § 506(a) (emphasis added).

Prior to the BAPCPA's enactment, if a Chapter 13 consumer debtor proposed a plan for confirmation which provided for the surrender of the 910 vehicle to the creditor pursuant to § 1325(a)(5)(C), § 506(a) supplied the creditor with a federal recourse remedy for a deficiency after the sale of the collateral. [5] However, since the hanging paragraph was added to § 1325 (a), bankruptcy courts across the nation disagree as to the paragraph's effect on a 910 creditor's contractual right, under state law, to a deficiency judgment after the proceeds from the collateral's sale fail to satisfy the total debt owed. The majority of bankruptcy courts have concluded that, by eliminating the application of § 506(a) to 910 claims, the hanging paragraph ensures that such creditors are without a remedy to bifurcate their loans into secured and unsecured portions, **[*318]** therefore rendering their loans **[**11]** non-

Get a Document - by Citation - 351 F.3d 512
Case 1:08-cv-00484-J4F   Document 7-2   Filed 09/02/2008   Page 19 of 34
Page 9 of 13

recourse regardless of what the parties' contract allows. *See e.g, In re Kenney*, No. 06-71975-A, 2007 Bankr. LEXIS 1646, 2007 WL 1412921, at *5 (Bankr. E.D. Va. May 10, 2007) (listing cases in which bankruptcy courts have adopted the majority view). Conversely, a minority of bankruptcy courts have concluded that Article 9 of the Uniform Commercial Code (UCC) and contract law entitle 910 creditors to an unsecured deficiency judgment after surrender of the vehicle, unless the contract provides for a non-recourse loan. 2007 Bankr. LEXIS 1646, [WL] at *4 (listing cases in which bankruptcy courts have adopted the minority view). Under this approach, the unsecured balance is treated in the same manner as other unsecured debts under a Chapter 13 reorganization plan.

## FOOTNOTES

5 Tidewater contends that the hanging paragraph does not apply to the surrender provision in § 1325(a)(5)(C). To support this contention, Tidewater argues that prior to the BAPCPA's enactment, § 506 was *only* applicable when the debtor retained collateral under § 1325(a)(5)(B), and *not* applicable when the debtor surrendered the collateral under § 1325(a)(5)(C). We do not agree. Rather, we conclude that, pre-BAPCPA, § 506 (a) applied to the surrender of collateral under § 1325(a)(5)(C), **[**12]** especially given the Supreme Court's explicit recognition, in *Associates Commer. Corp. v. Rash*, 520 U.S. 953, 962, 117 S. Ct. 1879, 138 L. Ed. 2d 148 (1997), of the apparent applicability of § 506(a) to the surrender provision. Based on the language of § 506(a) which specifies that valuation of collateral should be based upon its "disposition or use," Justice Ginsburg explained:

> As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. If a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, *see* § 1325(a)(5)(C); or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor, over the life of the plan, with the equivalent of the present value of the collateral, *see* § 1325(a)(5)(B). The "disposition or use" of the collateral thus turns on the alternative the debtor chooses-in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor.

*Id.* Accordingly, it is evident to this Court that[HN9] § 506 was applicable to the surrender **[**13]** provision in § 1325(a)(5)(C) pre-BAPCPA and continues to be applicable post-BAPCPA.

More recently, a growing number of circuit courts have adopted the minority approach, thus recognizing a 910 creditor's right to assert an unsecured deficiency claim under state law when a Chapter 13 debtor surrenders her vehicle under § 1325(a)(5)(C). *See DaimlerChrysler Fin. Serv. Americas LLC v. Ballard (In re Ballard)*, 526 F.3d 634, 2008 WL 2080852 (10th Cir. 2008); *Capital One Auto Fin. v. Osborn*, 515 F.3d 817 (8th Cir. 2008); *In the Matter of Wright*, 492 F.3d 829 (7th Cir. 2007); *cf. In re Long*, 519 F.3d 288 (6th Cir. 2008) (using the common law principle of interpretation known as "the equity of the statute" as a method of filling statutory gaps rather than resorting to non-bankruptcy law to preserve deficiency claims).

Based on a plain reading of the hanging paragraph, [HN10] there is no question that Congress has unambiguously eliminated the 910 creditor's access to a federal remedy under § 506(a). *See Ballard*, 526 F.3d 634, 2008 WL 2080852 at *3; *Osborn*, 515 F.3d at 821; *In re Wright*,

492 F.3d at 832. *HN11* "Because the statutory language is clear, we need not look beyond it." *Ballard*, 526 F.3d 634, 2008 WL 2080852 at *3, *United States v. Ron Pair Enters.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). **[**14]** However, in this case we are asked to decide whether a 910 creditor nevertheless has recourse against the debtor, under another body of law, for the remainder of the debt owed. *HN12* We join our sister courts in the Seventh, Eighth, and Tenth Circuits in holding that, after a debtor satisfies the requirements for plan confirmation under § 1325(a)(5)(C) by surrendering his 910 vehicle, the parties are left to their contractual rights and obligations, and the creditor may pursue an unsecured deficiency claim under state law. *See Ballard*, 526 F.3d 634, 2008 WL 2080852, at *5; *Osborn*, 515 F.3d at 822-23; *Wright*, 492 F.3d at 832-33.

The principle that state law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule is well recognized. *See Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1970); *see also Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 127 S. Ct. 1199, 1204-05, 167 L. Ed. 2d 178 (2007) (explaining the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code") (citations omitted); *Am. Bankers Ins. Co. of Florida v. Maness*, 101 F.3d 358, 365 (4th Cir. 1996) **[**15]** ("[W]hen Congress has not provided an explicit alternative to state law, we are mindful that the Bankruptcy Code was written in the shadow of state law and conclude that Congress intended state law to fill the interstices.") (quoting *In re Estate of Medcare HMO*, 998 F.2d 436, 441 (7th Cir. 1993)). The Supreme Court in *Butner* explained the logic behind this principle as follows:

> **[*319]** *HN13* *Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.* Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L. Ed. 2d 323. *The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests*, including the interest of a mortgagee in rents earned by mortgaged property. **[**16]**

440 U.S. at 55 (emphasis added). Accordingly, *Butner* confirms that, as with property interests, state law creates and defines security interests at issue in bankruptcy proceedings if no federal law requires a different result.

The Seventh Circuit Court of Appeals was the first court to resolve the split among bankruptcy courts regarding the hanging paragraph's effect on 910 claims when a vehicle is surrendered under § 1325(a)(5)(C). *See Wright*, 492 F.3d 829. In *Wright*, the court relied on the principle of *Butner* to affirm the decision of a bankruptcy judge who declined to approve a debtor's reorganization plan which proposed the surrender of a 910 vehicle to a creditor in full satisfaction of a debt owed. 492 F.3d at 832-33. Applying *Butner*, the *Wright* court held that, with § 506 no longer applicable to 910 claims, state law, in conjunction with the parties' underlying contract, created and defined a 910 creditor's entitlement to an unsecured deficiency judgment upon surrender (and subsequent sale) of the vehicle. *Id.*

The *Wright* court made clear that "it is a mistake to assume . . . that § 506 is the *only* **[**17]** source of authority for a deficiency judgment when the collateral is deficient." *Id.* at 832. Rather, the court recognized the principle in *Butner* that *HN14* "state law determines rights and obligations when the [Bankruptcy] Code does not supply a federal rule." *Id.* (citing

*Butner,* 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979)). Following this principle, the court concluded that (1) nothing in the Bankruptcy Code prohibits or qualifies an unsecured deficiency claim under state law following the surrender of collateral pursuant to § 1325(a) (5)(C); (2) "[c]reditors don't need § 506 to create, allow, or recognize security interests, which rest on contracts (and the UCC) rather than federal law"; and (3) rather, "[s]ection 502 tells bankruptcy courts to allow claims that stem from contractual debts" and "nothing in § 502 disfavors or curtails unsecured claims." [6] *Id. at* [*320] 832-33. Accordingly, the *Wright* court concluded that the "fallback under *Butner* is the parties' contract (to the extent the deal is enforceable under state law)[,]" and any deficiency after surrender and sale of the collateral "must be treated as an unsecured debt." *Id. at* 833.

## FOOTNOTES

[6] Section 502, entitled "Allowance of claims or interest," is a comprehensive section [**18] of the Bankruptcy Code. 11 U.S.C. § 502. Section 502 provides, in pertinent part:

> HN15 (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that--

>> (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

>> * * * * *

>> (k)(1) The court, on the motion of the debtor and after a hearing, may reduce a claim filed under this section based in whole on an unsecured consumer debt by not more than 20 percent of the claim, if--

>> (A) the claim was filed by a creditor who unreasonably refused to negotiate a reasonable alternative repayment [**19] schedule proposed on behalf of the debtor by an approved nonprofit budget and credit counseling agency described in section 111;

>> (B) the offer of the debtor under subparagraph (A)--

>> (i) was made at least 60 days before the date of the filing of the petition; and

>> (ii) provided for payment of at least 60 percent of the amount of the debt over a period not to exceed the repayment period of the loan, or a reasonable extension thereof; and

>> (C) no part of the debt under the alternative repayment schedule is nondischargeable.

(2) The debtor shall have the burden of proving, by clear and convincing evidence, that--

(A) the creditor unreasonably refused to consider the debtor's proposal; and

(B) the proposed alternative repayment schedule was made prior to expiration of the 60-day period specified in paragraph (1)(B)(i).

We are persuaded by the *Wright* court's reasoning and join the Seventh, Eighth, and Tenth Circuit Courts of Appeals in holding that, HN16⟨⟩when a Chapter 13 debtor surrenders a 910 vehicle in accordance with § 1325(a)(5)(C), the hanging paragraph does not extinguish a 910 creditor's unsecured deficiency claim so long as state law, in conjunction with the parties' contract, allows for such **[\*\*20]** claim. Specifically, we agree that § 506 is not the exclusive method for separating out the deficiency as an unsecured portion of a 910 claim. Pre-BAPCPA, the bifurcation method articulated in § 506 presented an undersecured 910 creditor with a federal recourse remedy against a Chapter 13 debtor who surrendered a vehicle with a market value less than the debt owed. Post-BAPCPA, we recognize that § 506 is no longer applicable to 910 claims, and we find no other bifurcation method in the Bankruptcy Code nor a rule in the Code which qualifies or eliminates a 910 creditor's contractual entitlement to a deficiency claim under state law. Thus, we conclude that such a deficiency claim may be pursued by a 910 creditor as an unsecured claim in a bankruptcy proceeding In this regard, we recognize that, before the hanging paragraph was added, § 506(a), as applied to 910 claims, merely provided "a method for the judicial valuation of an allowed secured claim; it [did] not provide a definition of the phrase 'allowed secured claim' applicable to other provisions of the Bankruptcy Code" which might be interpreted to preclude an unsecured claim for a deficiency. *Ballard*, 526 F.3d 634, 2008 WL 2080852 at 5 (*citing* **[\*\*21]** *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992)). As the Seventh Circuit Court of Appeals recognized, HN17⟨⟩"§ 502 rather than § 506 determines whether a claim should be allowed . . . ." *Wright*, 492 F.3d at 832. Because § 502 directs bankruptcy courts to allow claims stemming from contractual debts and neither diminishes nor disapproves of secured claims, it is evident to us that such deficiency claims must be permitted to the extent that state law allows for them. *See* 11 U.S.C. §§ 502(a), 502 (b)(1), 502(k); *see also* Travelers Cas. & Sur. Co., 127 S. Ct. at 1206 ("[W]e generally presume that claims enforceable under applicable state law will **[\*321]** be allowed in bankruptcy unless they are expressly disallowed."); *Osborn*, 515 F.3d at 822 (recognizing that "nothing in § 502 or § 1325 denies a creditor an unsecured deficiency claim").

Here, Tidewater is entitled, under state law and the parties' underlying contract, to a deficiency judgment against Kenney. The parties' sales contract provides Tidewater with a security interest in the vehicle, and such interest "*secures payment of all* [Kenney] owe[s] on *this contract*" and "secures [all] other agreements in this contract." *App.* 140-43 (emphasis added). The **[\*\*22]** contract further provides that, upon Tidewater's sale of the vehicle, Tidewater "will apply the money from the sale, less allowed expenses, to the amount [Kenney] owe[s]," and, "[i]f money from the sale is not enough to pay the amount [Kenney] owe[s,] [she] must pay the rest to [Tidewater]." *Id.* (emphasis added). Moreover, the sales contract specifies that "[f]ederal law and the law of the state of [Virginia] apply to this contract." *Id.* Given the explicit language in the parties' contract, there is no dispute that the contract provides Tidewater with a right to pursue a deficiency claim, and such contract is enforceable under Virginia law, particularly that state's version of Article 9 of the UCC. *See* VA. CODE ANN. §§ 8.9A-607 - 626; U.C.C. §§ 9-607-626.

Accordingly, we hold that, by surrendering the 910 vehicle, Kenney gave Tidewater the full market value of the collateral, and any deficiency after the sale of the vehicle is an unsecured debt that must be treated as an unsecured claim in the bankruptcy reorganization plan. *See Ballard,* 526 F.3d 634, 2008 WL 2080852, at * 5; *Osborn,* 515 F.3d at 822-23; *Wright,* 492 F.3d at 833. We join the Seventh Circuit Court of Appeals in further recognizing **[**23]** that "[such unsecured debt] need not be paid in full, any more than [Kenney's] other unsecured debts, but it can't be written off *in toto* while other unsecured creditors are paid some fraction of their entitlements." *Wright,* 492 F.3d at 833.

V.

For the foregoing reasons, we vacate the judgment of the Bankruptcy Court and remand this case for further proceedings in accordance with this opinion.

*VACATED AND REMANDED WITH INSTRUCTIONS*

View: **Full** | Custom    ◄═══ 1 of 1 ═══►    Print | Download | Fax | Email | Text Only
*Shepardize®* | TOA

⚠ **Tidewater Fin. Co. v. Kenney, 531 F.3d 312** (Copy w/ Cite)    Pages: 15

Service:  **Get by LEXSEE®**
Citation:  **2008 U.S. App. LEXIS 13377**
View:  **Full**
Date/Time:  Tuesday, September 2, 2008 - 6:13 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
🔲 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2008 U.S. Dist. LEXIS 27582

Case 1:08-cv-00484-JF Document 7-2 Filed 09/02/2008 Page 24 of 34

Page 1 of 3

FOCUS™ Terms [                    ]      Search Within  Original Results (1 - 1)  ▾  Go →

View: **Full** | Custom                                    Print | Download | Fა
                          ◥◣◤ **1 of 1** ◢◥◣
                          _Shepardize®_ | TOA

Ⓐ **Simon & Schuster, Inc. v. Advanced Mktg. Servs. (I..., 2008 U.S. Dist. LEXIS 27582**  (Copy w/ Ci

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 27582**

*2008 U.S. Dist. LEXIS 27582, \**

IN RE: ADVANCED MARKETING SERVICES, INC., a Delaware corporation, et al., Debtors.
SIMON & SCHUSTER, INC., a New York corporation, Plaintiff, v. ADVANCED MARKETING
SERVICES, INC., a Delaware corporation, Defendant.

Chapter 11, Case No. 06-11480-CSS, Jointly Administered, Misc. Act. No. 07-28-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2008 U.S. Dist. LEXIS 27582

April 3, 2008, Decided
April 3, 2008, Filed

**PRIOR HISTORY:  [\*1]**
Adv. Pro. No. 07-50004-CSS.
Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.), 360 B.R.
421, 2007 Bankr. LEXIS 135 (Bankr. D. Del., 2007)

**CORE TERMS:** interlocutory appeal, leave to appeal, question of law, difference of
opinion, legal issue, likelihood of success, preliminary injunction, termination, materially,
reversible

**COUNSEL:** For Advanced Marketing Services Inc., a Delaware Corporation, et al., Debtor:
Mark David Collins ▾✎, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE.

For Simon & Schuster Inc., a New York Corporation, Plaintiff: Jeremy W. Ryan ▾, LEAD
ATTORNEY, Saul Ewing LLP, Wilmington, DE.

For Advanced Marketing Services Inc., a Delaware Corporation, Defendant:
Mark David Collins ▾✎, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE.

For Wells Fargo Foothill Inc., Respondent: Kurt F. Gwynne ▾, LEAD ATTORNEY, Reed Smith
LLP, Wilmington, DE.

**JUDGES:** Joseph J. Farnan, Jr. ▾, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J. Farnan, Jr. ▾

**OPINION**

Get a Document - by Citation - 2008 U.S. Dist. LEXIS 27582    Page 2 of 3

Case 1:08-cv-00484-JJF    Document 7-2    Filed 09/02/2008    Page 25 of 34

**MEMORANDUM ORDER**

Pending before the Court is a Motion For Leave To Appeal (D.I. 1) filed by Plaintiff, Simon & Schuster, Inc. ("Simon & Schuster"). By its Motion, Simon & Schuster seeks leave to appeal an Order of the United States Bankruptcy Court for the District of Delaware denying its application for a temporary restraining order ("TRO").

The decision of whether to grant leave to file an interlocutory appeal is informed by the criteria set forth in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal. See [*2] In Re Magic Restaurants, Inc., 202 B.R. 24, 25 (D. Del.1996). Leave to file an interlocutory appeal may be granted when the order at issue (1) involves a controlling question of law upon which there is (2) substantial grounds for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. Katz v. Carte Blanche Corporation, 496 F.2d 747, 754 (3d Cir. 1974). However, these three criteria do not limit the Court's discretion to grant or deny an interlocutory appeal. Leave to file an interlocutory appeal may be denied for reasons apart from this specified criteria, including such matters as the appellate docket or the desire to have a full record before considering the disputed legal issue. Id. Because an interlocutory appeal represents a deviation from the basic judicial policy of deferring review until the entry of a final judgement, the party seeking leave to appeal an interlocutory order must also demonstrate that exceptional circumstances exist. Magic Restaurants, 202 B.R. at 26 (citations omitted).

In the Third Circuit, the grant or denial of a motion for TRO is generally not appealable. Simon v. Robinson, 196 Fed. Appx. 54, 56 (3d Cir. 2006); [*3] Robinson v. Lehman, 771 F.2d 772, 782 (3d Cir. 1985); Richardson v. Kennedy, 418 F.2d 235 (3d Cir. 1969). Indeed, neither this Court, nor any of the parties to this action have been able to locate any cases in the Third Circuit allowing for an appeal from the denial of a TRO. Simon & Schuster suggests that the Bankruptcy Court has already made up its mind regarding the merits of Simon & Schuster's reclamation claims; however, the Bankruptcy Court's decision only addressed the "likelihood" of success on the merits as required for a TRO, and no final conclusions regarding Simon & Schuster's ultimate success were rendered. See University of Texas v. Camenisch, 451 U.S. 390, 394-395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) (noting that it is improper to equate likelihood of success on the merits with actual success on the merits); United States v. Local 560, 974 F.2d 315, 330 (3d Cir. 1992) (recognizing that "a decision on a preliminary injunction is, in effect, only a prediction about the merits of the case").

Moreover, the Court is not persuaded that Simon & Schuster has established the criteria necessary for justifying an interlocutory appeal. Simon & Schuster suggests that controlling questions of law are at issue in [*4] this appeal, because the underlying claim involves a relatively new statutory amendment. However, the novelty of the legal question at issue is not dispositive of the question of whether a controlling legal issue is presented. Rather, the operative inquiry is whether the legal conclusions, if erroneous, would constitute reversible error on final appeal. Katz, 496 F.2d at 755. The Bankruptcy Court's holdings with respect to its decision denying a TRO are all preliminary in nature, and therefore, cannot constitute matters which would be reversible on final appeal. Clark v. K-Mart Corp., 979 F.2d 965, 969 (3d Cir. 1992) (recognizing that findings of fact and conclusions of law rendered during preliminary injunction stage of the proceedings are not binding).

In addition, the Court is not persuaded that Simon & Schuster has established either of the remaining prongs required for interlocutory appeal. A question of first impression, a lack of judicial authority on a legal question, or a party's disagreement with a court's decision do not demonstrate a substantial ground for difference of opinion. Magic, 202 B.R. at 26; In re Sharps Run Assoc., 157 B.R.776, 779, n.6 (D.N.J. 1993). Further, [*5] it appears to the Court that, regardless of the TRO ruling, the Bankruptcy Court will be required to preside over additional proceedings related to Simon & Schuster's claim whether it be further

injunctive proceedings, summary judgment proceedings, or a trial. In these circumstances, the Court is not persuaded that an interlocutory appeal would materially advance the ultimate termination of this litigation.

NOW THEREFORE, IT IS HEREBY ORDERED that the Motion For Leave To Appeal (D.I. 1) filed by Plaintiff, Simon & Schuster, Inc. is **DENIED.**

April 3, 2008

DATE

/s/ Joseph J. Farnan, Jr.

UNITED STATES DISTRICT JUDGE

View: **Full** | Custom

◄◄◄ **1 of 1** ►►►
*Shepardize®* | TOA

Print | Download | Fax | Email | Text Only

 **Simon & Schuster, Inc. v. Advanced Mktg. Servs. (I..., 2008 U.S. Dist. LEXIS 27582** (Copy w/ Cite)

Pages: 4

Service: **Get by LEXSEE®**
Citation: **2008 U.S. Dist. LEXIS 27582**
View: **Full**
Date/Time: **Tuesday, September 2, 2008 - 6:15 PM EDT**

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

**LexisNexis®**

About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

FOCUS™ Terms [                    ]  Search Within [Original Results (1 - 1) ▾] [Go →]

View: **Full** | Custom                    ◀ 1 of 1 ▶                    Print | Download | Fa
Shepardize® | TOA

Ⓐ **Excelsior College v. Frye (In re Frye), 2008 Bankr. LEXIS 1319**  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2008 Bankr. LEXIS 1319**

*2008 Bankr. LEXIS 1319, \**

In re Charles M. Frye, Debtor(s). Excelsior College, Plaintiff(s), vs. Charles M. Frye, Defendant(s).

BK. No. LA 06-16118 BB, Chapter 7, Adv. No. LA 07-01150

UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2008 Bankr. LEXIS 1319

April 22, 2008, Decided
April 22, 2008, Filed, Entered

**PRIOR HISTORY:** Frye v. Excelsior College (In re Frye), 2008 Bankr. LEXIS 1254 (B.A.P. 9th Cir., Apr. 10, 2008)

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff college won a judgment (Judgment 1) against defendant debtor, who appealed and also filed a Chapter 7. Plaintiff then filed an adversary complaint against defendant for nondischargeability per 11 U.S.C.S. § 523(a)(6) and won a motion for summary judgment (Judgment 2), which defendant appealed. Based on defendant's appeal of Judgment 1, plaintiff then petitioned for certification for a direct appeal of Judgment 2 per 28 U.S.C.S. § 158.

**OVERVIEW:** After his motion for reconsideration of Judgment 2 was denied, defendant appealed. Neither party elected to have Judgment 2 heard by the district court. Plaintiff then sought certification per 28 U.S.C.S. § 158(d)(2) by the Bankruptcy Appellate Panel of the Ninth Circuit which petition was redirected to the court, which took up the issue of whether certification of Judgment 2 was proper. It denied relief. While noting that certification would materially advance the review of Judgment 2, the court pointed out that it was always the case that skipping one level of appeal shortened the overall appellate process and that there was nothing about Judgment 2 that justified special treatment. Among the circumstances supporting the court's conclusion was that the dischargeability case had been fully adjudicated by the court, that nothing was being held in abeyance pending the outcome of review of Judgment 2, and that no litigation was proceeding that might prove unnecessary depending on the result of the appeal of Judgment 2. That is, the mere fact that plaintiff's appeal of Judgment 1 was currently pending did not afford a basis for certification of Judgment 2 under § 158(d)(2).

**OUTCOME:** The court held that certification of Judgment 2 for a direct appeal was not proper under 28 U.S.C.S. § 158 and denied plaintiff's petition for such certification.

Get a Document - by Citation - 2008 Bankr. LEXIS 1319

Case 1:08-cv-00484-JF   Document 73-2   Filed 09/02/2008   Page 28 of 34

Page 2 of 5

**CORE TERMS:** certification, final judgment, materially, question of law, direct appeal, progress, decree, jury verdict, bankruptcy case, matter of public, immediate appeal, injunction, needless, currently pending

## LEXISNEXIS® HEADNOTES                                                    ⊟**Hide**

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Procedures 🔍

*HN1* ⬇ 28 U.S.C.S. § 158(d)(2)(B) provides that, on the request of a party to an appeal, the court before whom a matter is pending should certify a matter for direct appeal to the Court of Appeals if the court determines that the circumstances specified in clause (i), (ii) or (iii) of subparagraph (A) of § 158(d)(2) exist. Thus, if the court finds that one or more of the following three statements are true, the court should issue the requested certification: (i) the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Procedures 🔍

*HN2* ⬇ The focus of 28 U.S.C.S. § 158(d)(2) is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation. Direct appeal may be appropriate where a judgment of the circuit court of appeals would materially advance the progress of the case. For instance, where a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation, the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear. More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > General Overview 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction 🔍
Bankruptcy Law > Practice & Proceedings > Appeals > Procedures 🔍

*HN3* ⬇ Where the recognition of a right of direct appeal would not obviate the need for the parties to engage in what might later prove to have been needless litigation, the showing required by 28 U.S.C.S. § 158(d)(2) has not been made. More Like This Headnote

**COUNSEL:** **[*1]** For Excelsior College, Plaintiff: Edward Medina, San Diego, CA; Jeffrey D Cawdrey ⌄❀, Gordon & Rees, LLP, San Diego, CA.

Charles Mitchell Frye, Defendant, Pro se, Long Beach, CA.

**JUDGES:** Sheri Bluebond ⌄, United States Bankruptcy Judge.

**OPINION BY:** Sheri Bluebond ⌄

**OPINION**

**MEMORANDUM OF DECISION RE PLAINTIFF'S PETITION FOR CERTIFICATION OF CIRCUMSTANCES FOR DIRECT APPEAL**

(No hearing required)

After plaintiff Excelsior College ("Excelsior") obtained a jury verdict and a final judgment and permanent injunction (the "District Court Judgment") against Charles Mitchell Frye ("Frye") in Excelsior College v. Frye, United States District Court Case no. 04CV0535WQH, 2007 U.S. Dist. LEXIS 11934 (the "District Court Action"), Frye filed a chapter 7 bankruptcy case in the above court on November 22, 2006. On February 15, 2007, Excelsior filed a complaint seeking to have Frye's obligations to Excelsior under the District Court Judgment excepted from the discharge under 11 U.S.C. § 523(a)(6), commencing the above-entitled adversary proceeding (the "Dischargeability Action").

On or about March 23, 2007, this Court modified the automatic stay in Frye's bankruptcy case to permit Excelsior and Frye to litigate any post-trial motions and appeals in the District Court Action **[*2]** to a final judgment. Excelsior advises that Frye's appeal of the District Court Judgment (the "First Appeal") has been assigned docket no. 07-55997 and is currently pending before the United States Court of Appeals for the Ninth Circuit.

In the interim, Excelsior moved for summary judgment in the Dischargeability Action. The Court granted that motion by order entered January 31, 2008. After requesting and obtaining additional briefing and conducting a separate hearing on the issue of whether final judgment should be entered in the Dischargeability Action now or stayed pending the outcome of the First Appeal, the Court entered a final judgment in the Dischargeability Action, excepting Frye's debts to Excelsior under the District Court Judgment from the discharge in Frye's bankruptcy under Bankruptcy Code section 523(a)(6) (the "Dischargeability Judgment"). Frye moved for reconsideration. That motion was denied.

Thereafter, on or about February 15, 2008, Frye filed a notice of appeal from the Dischargeability Judgment. Neither party exercised its right to have that appeal (the "Second Appeal") heard by the District Court. On or about April 1, 2008, Excelsior petitioned the Bankruptcy Appellate **[*3]** Panel of the Ninth Circuit (the "BAP") for a certification under 28 U.S.C. § 158(d)(2) with regard to the Second Appeal. In response, the BAP ruled that Excelsior's petition for certification (the "Petition") should have been directed to this Court, rather than the BAP, because the docketing of the Second Appeal at the BAP had not yet occurred. This memorandum sets forth the Bankruptcy Court's ruling in response to the Petition.

Although the Court understands and appreciates Excelsior's desire to see the final resolution of its protracted litigation with Frye concluded as expeditiously as possible, the Court's review of the language of section 158(d)(2) and of the authorities that have interpreted that language leaves this Court with the firm conviction that the circumstances of this appeal do not warrant the application of this section. Although a certification under section 158(d)(2) would materially advance the progress of the Second Appeal, it is *always* the case that skipping one level of appeal would make the appeals process shorter. If such a showing were sufficient to entitle an appellant (or an appellee) to a certification under section 158(d)(2), every appeal would be an appropriate **[*4]** candidate for certification under this section. Clearly, more must be required, and this Court does not believe that the "economies of scale" argument that Excelsior has advanced will suffice for this purpose. Therefore, the Petition must be denied.

Get a Document - by Citation - 2008 Bankr. LEXIS 1319

Case 1:08-cv-00484-JJF   Document 72   Filed 09/02/2008   Page 30 of 34

Page 4 of 5

*HN1* Section 158(d)(2)(B) provides that, on the request of a party to an appeal, the court before whom a matter is pending should certify a matter for direct appeal to the Court of Appeals if the court determines that the circumstances specified in clause (i), (ii) or (iii) of subparagraph (A) of section 158(d)(2) exist. Thus, if the court finds that one or more of the following three statements are true, the court should issue the requested certification:

(i) the judgment, order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

Excelsior's **[*5]** Petition is based entirely on the third of these clauses applies and argues that an immediate appeal of the Second Appeal to the Ninth Circuit would materially advance the resolution of these proceedings. However, the Dischargeability Action has been fully resolved. Nothing is being held in abeyance pending the outcome of the Second Appeal. No litigation is proceeding forward at the trial court level that might prove unnecessary if the parties knew now that the Dischargeability Judgment would, or would not, be reversed on appeal.

The crux of Excelsior's argument is simply that there is a related appeal currently pending before the Ninth Circuit (the First Appeal) and it would be more efficient to have the Ninth Circuit consider the issues raised by both appeals at the same time than to have the appeals considered separately by two different courts or at two separate times by the same court. While this may (or may not) be true, [1] this does not appear to be the kind of fact pattern that Congress envisioned when it created the prospect of a direct right of appeal of the Circuit.

**FOOTNOTES**

1 The issues raised by the two appeals are entirely separate. Only the underlying facts are the same. To resolve **[*6]** the First Appeal, the Circuit will need to consider whether there were any errors or defects in the proceedings that led to the jury verdict and the judgment and injunction that are based upon it. To resolve the Second Appeal, the District Court will need to ascertain whether the findings made in the District Court Action are sufficient to give rise to nondischargeable liability under section 523(a)(6).

As the Second Circuit noted when it rejected an appeal that a bankruptcy court had certified under section 158(d)(2) in Weber v. United States Trustee, 484 F.3d 154 (2d Cir. 2007),

*HN2* The focus of the statute [section 158(d)(2)] is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation.

* * * *

[D]irect appeal may be appropriate where a judgment of this court would 'materially advance the progress of the case.' For instance, where a bankruptcy court has made a ruling which, if correct, will essentially determine the result of future litigation, the parties adversely affected by the ruling might very well fold up their tents if convinced that the ruling **[*7]** has the approval of the court of appeals, but will not give up until that becomes clear.

484 F.3d at 158.

It follows from this reasoning that, ᴴᴺ³ᵀwhere the recognition of a right of direct appeal would not obviate the need for the parties to engage in what might later prove to have been needless litigation, the requisite showing has not been made. And that is the case here. The Dischargeability Action has been fully resolved at the trial court level by the entry of the Dischargeability Judgment. There is no pending litigation between the parties other than the existing appeals. Accordingly, the Petition should be denied. The Court will enter an order to this effect concurrently herewith.

DATED: April 22, 2008

/s/ Sheri Bluebond

United States Bankruptcy Judge

---

View: **Full** | Custom                  ◄ **1 of 1** ►                  Print | Download | Fax | Email | Text Only
                                         *Shepardize®* | TOA

Ⓐ **Excelsior College v. Frye (In re Frye), 2008 Bankr. LEXIS 1319**  (Copy w/ Cite)           Pages: 6

Service: **Get by LEXSEE®**
Citation: **2008 Bankr. LEXIS 1319**
   View: Full
Date/Time: Tuesday, September 2, 2008 - 6:16 PM EDT

* Signal Legend:
● -  Warning: Negative treatment is indicated
🅀 -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 **LexisNexis®**     About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

**H**Pegasus Development Corp. v. Directv, Inc.
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics, Inc., and Philips
Electronics North America Corporation, Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.
*1 AND RELATED COUNTERCLAIMS

I. INTRODUCTION

On December 4, 2000, Pegasus Development Corporation ("Pegasus") and Personalized Media Communications, L.L.C. ("PMC") filed a complaint against several defendants, alleging infringement of six patents, including U.S. Patent Nos. 4,965,825 ("the '825 patent") and 5,335,277 ("the '277 patents"). Since that time, the original scheduling order has been revised several times. Currently, fact discovery is scheduled to close on August 22, 2003, and a trial is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respectively, the defendant Thomson Consumer Electronics, Inc. ("Thomson") filed with the Patent and Trademark Office ("PTO") a request for *ex parte* reexaminations of the '825 and '277 patents. The request for reexamination of the '825 patent was granted on April 10, 2003.[FN1]Presently before the court is a joint motion by the defendants to stay the litigation pending the completion of the patent reexaminations (D.I.459). After careful consideration of the parties' submissions, and for the reasons detailed below, the court will grant the motion.

FN1. The court is not yet aware of a

decision by the PTO regarding reexamination of the '277 patent.

II. DISCUSSION

The decision to stay a case is firmly within the discretion of the court.*Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir.1985).* This authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed.Cir.1988)* ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citation omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg., 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)* ("[I]n passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed.Cir.1983)* (citing legislative history of reexamination statute). In determining whether a stay is appropriate, the court is guided by the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."*Xerox Corp v. 3 Comm Corp., 69 F.Supp.2d 404, 406 (W.D.N.Y.1999)* (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991)* (stating a similar test).

In this case, there are two plaintiffs, four defendants, and several counter claimants, as well as six patents comprising dozens of claims. In addition, the written submissions in this case have been particularly voluminous; the briefing on claim construction alone, for example, constitutes 576 pages. *See Report and Recommendation of Special Master Regarding Claim Construction at 2* (citing "copious briefing"). In these ways, the present suit is quite complex, although, perhaps, not extraordinarily so. The greater context of this suit is extraordinary, however: the plaintiffs have filed more than 300 related patent applications based upon an original patent application filed in 1981 and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document."*Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21.Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech, Inc.,* 1997 WL 94237, at *9 (D.Kan.1997); *Hamilton Indus., Inc. v. Midwest Folding Products Mfg.,* 1990 WL 37642, at *1-2 (N.D.Ill.1990). Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination, the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* 213 U.S.P.Q. 290, 290 (W.D.Okla.1982) ("Congress

enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134471, at *3 (S.D.N.Y.2000) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986) (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is undue.

**\*3** Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I.460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:

1. The defendants' Motion to Stay Pending Reexamination by the U .S. Patent and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.

2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.

*4 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.

4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.

5. Phillips' Motion to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

D.Del.,2003.
Pegasus Development Corp. v. Directv, Inc.
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.